UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

HIGHLINE CAPITAL MANAGEMENT, LLC,     :     Civil Action No.:

          Plaintiff,     :

    - against -     :     **COMPLAINT**

    :     **JURY TRIAL DEMANDED**

HIGH LINE VENTURE PARTNERS, L.P., HIGH LINE     :
VENTURE PARTNERS II, L.P., HIGH LINE VENTURE     :
PARTNERS GP, LLC, HIGH LINE VENTURE     :     JUDGE CAPRONI
PARTNERS GP II, LLC, SHANA FISHER and ALEX     :
BINKLEY,     :

          Defendants.     :

------------------------------------------------------------------ x

      Plaintiff, Highline Capital Management, LLC. ("Plaintiff" or "Highline"), by its attorneys,

Tannenbaum Helpern Syracuse & Hirschtritt LLP, for its Complaint herein alleges:

## Nature of the Action

      1. Highline is a well-established financial services company specializing in the

management of private investment funds. Since July 1995, Highline has used its federally

registered trademark HIGHLINE® to identify the financial services it provides and, through

substantial effort, its HIGHLINE mark has developed substantial and valuable goodwill. It has

come to Highline's attention that defendants Shana Fisher and Alex Binkley, through business

entities they control named High Line Venture Partners L.P., High Line Venture Partners II, L.P.,

High Line Venture Partners GP, LLC, and High Line Venture Partners GP II, LLC (collectively,

"High Line"), are offering financial services under the confusingly similar service mark HIGH

LINE. This has caused actual confusion between Highline and High Line.

2. Accordingly, to protect the goodwill associated with its trademark from infringement and dilution, and to protect its trademark rights, Highline has commenced this action for (a) infringement of federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114, (b) trademark infringement and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (c) use of deceptive acts or practices in the conduct of business, trade or commerce or the furnishing of services in violation of New York General Business Law § 349, (d) trademark infringement and unfair competition in violation of common law, and (e) trademark dilution and injury to business reputation in violation of New York General Business Law § 360-*l*.

## **The Parties**

3. Plaintiff Highline is a Delaware limited liability company having its principal place of business at One Rockefeller Plaza, 30th Floor, New York, New York 10020.

4. Upon information and belief, defendant High Line Venture Partners, L.P. is a Delaware limited partnership, with its principal place of business at 555 West 18th Street, New York, New York 10011.

5. Upon information and belief, defendant High Line Venture Partners II, L.P. is a Delaware limited partnership, with its principal place of business at 555 West 18th Street, New York, New York 10011.

6. Upon information and belief, defendant High Line Venture Partners GP, LLC is a Delaware limited liability company, with its principal place of business at 555 West 18th Street, New York, New York 10011.

7.      Upon information and belief, defendant High Line Venture Partners GP II, LLC is a Delaware limited liability company, with its principal place of business at 555 West 18th Street, New York, New York 10011.

8.      Upon information and belief, defendant Shana Fisher ("Fisher") is a citizen of the State of New York and a principal of the High Line Venture Partners entities referred to in Paragraphs 4 through 7 above, with a place of business at 555 West 18th Street, New York, New York 10011.

9.      Upon information and belief, defendant Alex Binkley ("Binkley") is a citizen of the State of New York and a principal of the High Line Venture Partners entities referred to in Paragraphs 4 through 7 above with a place of business at 555 West 18th Street, New York, New York 10011.

## Jurisdiction

10. This action arises, *inter alia,* under the Trademark Act of July 5, 1946, as amended, 15 U.S.C. §§ 1051 *et seq.*, known as the Lanham Act.

11. This Court has jurisdiction of this action pursuant to § 39(a) of the Lanham Act, 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a).

## FIRST CLAIM FOR RELIEF

### Infringement of Registered Trademark

### Plaintiff's Business and Marks

12. Highline engages in the business of investment fund management through, *inter alia,* offering qualified investors opportunities to invest in private investment funds.

13. Highline's customers include U.S. and non-U.S. individuals and institutional investors. Highline has customers throughout the United States, including in the Southern District of New York, and in a number of other countries.

14. Highline is the owner of all right, title and interest, in the federally registered trademark HIGHLINE for financial services in the nature of investment fund management, which it uses in connection with its investment fund management business. The trademark HIGHLINE is registered with the United States Patent & Trademark Office under Registration No. 2,502,179. A copy of the certificate of registration is annexed as Exhibit A.

15. Highline is also the owner of all right, title and interest, in the federally registered trademark HIGHLINE CAPTIAL and design for financial services in the nature of investment fund management, which it uses in connection with its investment fund management business. The trademark HIGHLINE CAPITAL and design is registered with the United States Patent & Trademark Office under Registration No. 3,676,129. A copy of the certificate of registration is annexed as Exhibit B.

16. Highline has used the mark HIGHLINE in interstate commerce since at least July 31, 1995, and has used the HIGHLINE CAPITAL and design mark in interstate commerce since at least October 1, 2008, in connection with both its investment fund management services and its management and operation of the investment funds it operates, Highline Capital Partners, L.P., Highline Capital Partners QP LP, Highline Capital International, Ltd., Highline Select, L.P., Highline Enhanced, Ltd. and Highline Capital Qualified Fund, Ltd., and has used the trade name and company name "Highline Capital Management" since at least July 31, 1995. Highline has also used its HIGHLINE mark as the dominant element of the name of its affiliated company Highline Capital Holdings, L.L.C.

[825150-1]

4

17. By virtue of having been in continuous use for more than five consecutive years subsequent to the dates of registration and Highline's compliance with the provisions of § 15 of the Lanham Act, the marks HIGHLINE and HIGHLINE CAPITAL and design (together, the "HIGHLINE Marks") have become incontestable within the meaning of said section, and Highline has the exclusive right to use said marks throughout the United States.

18. Highline has also used its HIGHLINE mark as part of the Internet domain name "highlinecap.com," which it also owns, identifying its Internet web site located at www.highlinecap.com.

19. As a result of substantial time and effort, and long and substantial use of the HIGHLINE Marks, Highline has developed substantial recognition for its services and the investment funds it manages under the HIGHLINE Marks, which have acquired and now enjoy a valuable reputation and goodwill associated with said mark.

**Defendants' Activities**

20. Upon information and belief, Defendants Fisher and Binkley formed defendants High Line Venture Partners, L.P. and High Line Venture Partners GP, LLC in or about June 2010 and formed High Line Venture Partners II, L.P. and High Line Venture Partners GP II, LLC in or about January 2012.

21. Upon information and belief, Defendants Fisher and Binkley are the principals of the High Line entities referred to in Paragraph 20, above (collectively, with Fisher and Binkley, the "High Line Defendants").

22. Upon information and belief, High Line Venture Partners, L.P. and High Line Venture Partners II, L.P. offer investment management services in the nature of venture capital

investment services and High Line Venture Partners GP, LLC and High Line Venture Partners GP II, LLC serve as their respective general partners.

23.    In or about May 2010, Defendant Fisher registered the Internet domain name "highlinevp.com," which she currently owns and uses in commerce in connection with the High Line Defendants' business.

24.    Defendants are currently offering investment management services in the nature of venture capital investment services to consumers and are operating an Internet website promoting their business located at www.highlinevp.com (the "High Line Website").   In connection with their business Defendants are using the marks HIGH LINE and HIGH LINE VENTURE PARTNERS and the Internet domain name "highlinevp.com."

25.    The date or dates on which Defendants commenced offering their services and on which the High Line Website became operational are currently unknown to Highline.  However, Defendants' activities had little market impact and garnered little market recognition until recently.

26.    Highline first learned of the High Line Defendants' activities in or about mid-June 2014 when Highline received an announcement of the preliminary 2014 conference agenda for an investment management industry conference to be offered by Delivering Alpha, in conjunction with CNBC and Institutional Investor magazine at the Pierre Hotel in New York on July 16, 2014.  A copy of the announcement is annexed as Exhibit C.  The announcement stated:

> With hedge fund titans and institutional investors offering candid views along with over 100 institutional investors representing over $2 trillion in investible assets, Delivering Alpha has established itself as the conference to attend in 2014.

*      *      *

Our agenda will feature key discussions with some of the world's most renowned hedge fund managers and the largest investors globally as well as illustrious political and economic commentators including:

\*     \*     \*

- Shana Fisher, *Managing Partner,* **High Line Venture Partners**

\*     \*     \*

(Emphasis in original.)

27.     Upon information and belief, the Delivering Alpha conference took place as scheduled on July 16, 2014 and Defendant Fisher spoke at the conference as a representative of "High Line Venture Partners."

28.     Highline next encountered the High Line Defendants on or about October 1, 2014 when it learned that the website Technical.ly Brooklyn, a website featuring news and information concerning technology businesses, reported that "Highline Capital" had invested in a company that markets a smart phone app designed to rate foods based on certain attributes.  In fact, the High Line Defendants had made this investment.   Under the headline, "Food righteousness app raises $2 million [Startup Roundup], Technical.ly Brooklyn reported:

"WHO'S GETTING MONEY?

Greenpoint's HowGood, an iOS and Android app that rates foods based on a number of attributes, such as sustainability and social impact, has raised a $2 million seed round backed by **FirstMark Ventures** and **Highline Capital,** according to Crain's."  (Emphasis in original.)  A screenprint of the report in Technical.ly Brooklyn is annexed as Exhibit D.

29. Defendants' use of the HIGH LINE trademark and trade name HIGH LINE is not licensed by, and is without the consent of, Highline.

30.   Upon information and belief, Defendants' venture capital investment management services offered or promoted under the HIGH LINE mark and trade name are offered and will

[825150-1]

continue to be offered through the same channels of trade, and to the same classes of investors, as the investment management services offered by Highline under the registered HIGHLINE Marks.

**Likelihood of Confusion; Injury to Plaintiff**

31.   Defendants' use of the HIGH LINE mark and trade name, and the Internet domain name <highlinevp.com>, for venture capital investment management services, which are confusingly similar to Highline's HIGHLINE Marks and <highlinecap.com> Internet domain name, falsely indicates to consumers, to the trade and to businesses that serve the trade, such as prime brokers, research firms and other broker-dealers, that Defendants and/or their services are in some manner connected with, sponsored by, affiliated with, or related to Highline and its services and products.

32.   Defendants' use of the HIGH LINE mark and trade name, and the Internet domain name <highlinevp.com>, in connection with Defendants' venture capital investment management services allows, and will continue to allow, Defendants to receive the benefit of goodwill built up at great labor and expense by Highline and to gain interest, acceptance and recognition, including, but not limited to, initial interest, acceptance and recognition, for Defendants' services not based on the merits of those services and products, but on the reputation and goodwill of Highline's services and products.

33.   The above-mentioned activities of Defendants are likely to cause confusion, or to cause mistake, or to deceive consumers, the trade, and businesses that serve the trade concerning the origin of Defendants' services and products.   Such persons are likely to believe that Defendants' services and products come from Highline or are sponsored by, approved by, or associated with Highline.

34.   Defendants' activities have caused actual confusion between Plaintiff's and Defendants' services within the State of New York and the Southern District of New York.

35.   Defendants' activities also cause Highline to lose control over its reputation and put Highline's reputation and considerable goodwill at risk.

36.   After Highline learned of Defendants' activities as described in Paragraphs 26 and 27 above, Highline contacted Defendant Fisher informally and requested that she cease using the mark HIGH LINE or any mark containing the element HIGHLINE or HIGH LINE in connection with financial services.  After learning of the actual confusion described in Paragraph 28, above, Highline contacted Ms. Fisher again.  However, Defendant Fisher indicated that she would not consider changing her firms' names.

37.   Accordingly, on or about October 8, 2014 Highline, through its counsel, notified Defendants in writing of Highline's exclusive rights in and to the HIGHLINE Marks and formally demanded in writing that Defendants cease and desist from their unlawful activities as described above.  Further communications between Highline's and Defendants' counsel ensued prior to the filing of this Complaint.  Despite these communications, Defendants have remained unwilling to cease their use of the HIGH LINE mark and trade name and the <highlinevp.com> Internet domain name.

38.   The acts of Defendants complained of above have been conducted in commerce and have affected, and will continue to affect, Highline's business of offering investment management services and investment products in commerce.

39.   Defendants' activities described above constitute infringement of a registered trademark and false designation of origin in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

[825150-1]

9

40.   Defendants are well aware of Highline's trademark rights and their deliberate decision to infringe those rights makes the infringement herein willful.

41.   Upon information and belief, the nature of the acts of Defendants complained of above, and the state of Defendants' knowledge of Highline's rights, make this an exceptional case under § 35 of the Lanham Act, 15 U.S.C. § 1117(a).

42.   By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

43.   By reason of the foregoing, Highline has been injured in its business and is entitled to preliminary and permanent injunctive relief and to recover damages in an amount to be proved at trial, enhanced in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### False Designation of Origin

44.   Plaintiff repeats and realleges the foregoing Paragraphs 1 through 43 as if fully set forth herein.

45.   The acts of Defendants complained of above constitute false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.   By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

47.   By reason of the foregoing, Highline has been injured in its business and is entitled to preliminary and permanent injunctive relief and to recover damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF

### Use of Deceptive Acts or Practices

48.   Plaintiff repeats and realleges the foregoing Paragraphs 1 through 47 as if fully set forth herein.

49.   The acts of Defendants complained of above constitute use of deceptive acts or practices in the conduct of business, trade or commerce or the furnishing of services in violation of New York General Business Law § 349.

50.   By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

51.   By reason of the foregoing, Highline has been injured in its business and is entitled to preliminary and permanent injunctive relief and to recover damages in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF

### Common Law Trademark Infringement and Unfair Competition

52.   Plaintiff repeats and realleges the foregoing Paragraphs 1 through 51 as if fully set forth herein.

53.   The acts of Defendants complained of above have and will continue to unjustly enrich Defendants at Highline's expense by confusing potential investors, consultants and service providers concerning a relationship, including, but not limited to, sponsorship, approval, ownership or affiliation between Highline and Defendants.

54.   The acts of Defendants complained of above constitute trademark infringement and unfair competition under the common law of the States of New York and Illinois.

[825150-1]

11

55.    By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

56.    By reason of the foregoing, Highline has been injured in its business and is entitled to preliminary and permanent injunctive relief and to recover damages in an amount to be proved at trial.

FIFTH CLAIM FOR RELIEF

**State Law Trademark Dilution and Injury to Business Reputation**

57.    Plaintiff repeats and realleges the foregoing Paragraphs 1 through 56 as if fully set forth herein.

58.    Highline's HIGHLINE Marks are distinctive or have acquired distinctiveness.

59.    Defendants' use of their HIGH LINE mark and trade name as alleged above is likely to cause dilution by blurring and/or tarnishment of the HIGNLINE Marks.

60.    Defendants' use of their HIGH LINE mark and trade name as alleged above will cause Highline to lose control of the reputation of its name and mark in that consumers, the trade, and businesses that serve the trade are likely to associate with Highline the performance of Defendants' services, any legal or regulatory difficulties encountered by Defendants, or any other detrimental events or events likely to generate negative publicity that may befall Defendants. Such events, which are outside Highline's control, are likely to injure Highline's business reputation.

61.    The acts of Defendants complained of constitute trademark dilution and damage to business reputation in violation of New York General Business Law § 260-*l*.

[825150-1]

62.   By reason of the foregoing, Highline is likely to suffer, has suffered, and unless enjoined by this Court will continue to suffer, irreparable injury in the form of dilution of its trademark and loss of control of its business reputation, for which Highline has no adequate remedy at law.

63.   By reason of the foregoing, Highline has been injured in its business and is entitled to injunctive relief and to recover damages in an amount to be proved at trial.

WHEREFORE, Plaintiff demands judgment:

(a)   Enjoining Defendants, Defendants' officers, agents, employees, attorneys, subsidiaries, assigns or related companies, and those in active concert or participation with Defendants, or any of them, who receive actual notice of the judgment by personal service or otherwise, from using or employing, directly or indirectly, the service mark, trademark or trade name HIGH LINE or any mark or trade name confusingly similar to HIGHLINE, or that contains the element HIGHLINE in any variant form, in connection with the offering or sale of financial services in the nature of venture capital or other investment management services;

(b)   Directing Defendants to file with this Court, within thirty (30) days after entry of any injunction in this case, a written statement, under oath, setting forth in detail the manner in which Defendants have complied with the injunction;

(c)   Directing Defendants to account to Plaintiff for the profits of its infringement;

(d)   Awarding Plaintiff its damages, in an amount to be proved at trial, resulting from the acts alleged herein, enhanced in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117, or other applicable law; and

(e)   Awarding Plaintiff reasonable attorneys' fees in accordance with § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

[825150-1]

13

together with such other and further relief as this Court deems just and proper and the costs and

disbursements of this action.

Dated: New York, New York
        January 29, 2015

                                TANNENBAUM HELPERN
                                  SYRACUSE & HIRSCHTRITT, LLP


                                By: _____
                                        L. Donald Prutzman
                                900 Third Avenue
                                New York, New York 10022
                                (212) 508-6700
                                    Attorneys for Plaintiff

# EXHIBIT A

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,502,179

**United States Patent and Trademark Office** Registered Oct. 30, 2001

## SERVICE MARK
### PRINCIPAL REGISTER

## HIGHLINE

HIGHLINE CAPITAL MANAGEMENT, LLC (DE-
LAWARE LIMITED LIABILITY COMPANY)
1270 AVENUE OF THE AMERICAS
ROCKEFELLER CENTER
NEW YORK, NY 10020

FIRST USE 7-31-1995; IN COMMERCE 7-31-1995.

SER. NO. 78-035,852, FILED 11-17-2000.

FOR: FINANCIAL SERVICES IN THE NATURE
OF INVESTMENT FUND MANAGEMENT, IN
CLASS 36 (U.S. CLS. 100, 101 AND 102).

CHRISTOPHER LEADEN, EXAMINING ATTOR-
NEY

# EXHIBIT B

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 3,676,129
Registered Sep. 1, 2009

**SERVICE MARK**
**PRINCIPAL REGISTER**



HIGHLINE CAPITAL MANAGEMENT, LLC (DE-
LAWARE LIMITED LIABILITY COMPANY)
ONE ROCKEFELLER PLAZA, 30TH FLOOR
NEW YORK, NY 10020

FOR: FINANCIAL SERVICES IN THE NATURE
OF INVESTMENT FUND MANAGEMENT, IN
CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 10-1-2008; IN COMMERCE 10-1-2008.

OWNER OF U.S. REG. NO. 2,502,179.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "CAPITAL", APART FROM THE
MARK AS SHOWN.

THE MARK CONSISTS OF THE ELEMENT
"HIGHLINE" IN SYTLIZED TYPEFACE FOL-
LOWED BY A STYLIZED LETTER "H" ABOVE
THE ELEMENT "CAPITAL" IN STYLIZED TYPE-
FACE.

SER. NO. 77-671,899, FILED 2-17-2009.

ODESSA BIBBINS, EXAMINING ATTORNEY

# EXHIBIT C

July 16, 2014 | The Pierre Hotel | New York City

Register | DeliveringAlpha.com | Agenda | Investor List

Dear Jacob,

Delivering Alpha 2014 is pleased to announce the preliminary 2014 conference agenda.

With hedge fund titans and institutional investors offering candid views along with over 100 institutional investors representing over $2 trillion in investible assets, Delivering Alpha has established itself as the conference to attend in 2014. While the agenda will be available shortly online, we wanted to make sure you were able to preview an advanced program before it is released to the general public.

Our agenda will feature key discussions with some of the world's most renowned hedge fund managers and the largest investors globally as well as illustrious political and economic commentators including:

- Lee Ainslie, *Chief Executive Officer,* **Maverick Capital**

- M. Barry Bausano, *President - Deutsche Bank Securities Inc. and Co-Head Markets Prime Finance,* **Deutsche Bank**

- Josh Birnbaum, *Chief Investment Officer,* **Tilden Park Capital Management**

- Jim Breyer, *Founder and Chief Executive Officer,* **Breyer Capital**

- Mary Callahan Erdoes, *Chief Executive Officer,* **J.P. Morgan Asset Management**

- Chris Christie, *The 55th Governor of New Jersey*

- Leon G. Cooperman, *Chairman,* **Omega Advisors, Inc.**

- Shana Fisher, *Managing Partner,* **High Line Venture Partners**

- Ken Griffin, *Founder & Chief Executive Officer,* **Citadel Investment Group**

- Deepak Gulati, *Chief Investment Officer,* **Argentiere Capital**

- Carl Icahn, *Chairman,* **Icahn Enterprises**

- Jacob J. Lew, *The 76th United States Secretary of the Treasury*

- Paul Marshall, *Co-Founder & Chairman,* **Marshall Wace North America L.P.**

- Michael Novogratz, *Principal & Director,* **Fortress Investment Group LLC**

- John Paulson, *President & Portfolio Manager,* **Paulson & Co.**

- Nelson Peltz, *Founding Partner and Chief Executive Officer,* **Trian Fund Management, L.P.**

- Larry Robbins, *Founder, Portfolio Manager & Chief Executive Officer,* **Glenview Capital Management**

- Jeffrey Smith, *Managing Member, Chief Executive Officer and Chief Investment Officer,* **Starboard Value**

Additional speakers and moderators will be announced shortly.

Be sure to register early at www.DeliveringAlpha.com as *the conference will sell out again this year, and remember; only those registrations received by June 13th will be eligible to be included in the Manager Profile Directory.*

Best Regards,

Lisa Yao
*Executive Director*
**Delivering Alpha**


To unsubscribe click here

[825150-1]

# EXHIBIT D

# Food righteousness app raises $2 million [Startup Roundup]

Plus: a bunch of journalists writing about a podcast about a forthcoming podcast network.

By Brady Dale  STAFF

*Screenshots from the HowGood app.*

















## CONNECTIONS                     HowtoDirectory

### ORGANIZATIONS
HowGood, Final Frontier Design, Tasttr,
Bandwagon, NPR

### TAGS
Startup Roundup



**Be there.**
Our calendar has
the tech events
that matter.

**WHO'S GETTING MONEY?**

Greenpoint's HowGood, an iOS and Android app that rates foods based on a number of attributes, such as sustainability and social impact, has raised a $2 million seed round, backed by **FirstMark Ventures** and **Highline Capital,** according to Crain's.

Downtown Brooklyn's Brandwagon was accepted into Hawaii's Energy Excelerator. The company "will receive $75K