UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HIGHLINE CAPITAL MANAGEMENT, LLC,

   Plaintiff,

 vs.

HIGH LINE VENTURE PARTNERS, L.P., et. al.

   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HIGH LINE VENTURE PARTNERS, L.P.

   Counterclaim Plaintiff,

 vs.

HIGHLINE CAPITAL MANAGEMENT, LLC,

   Counterclaim Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

15 CIV 660 (VEC)

ECF Case

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS DEFENDANT HIGH LINE VENTURE PARTNERS, L.P.'S
AMENDED COUNTERCLAIMS**

       DEBEVOISE & PLIMPTON LLP
       919 Third Avenue
       New York, New York 10022
       (212) 909-6696

       TANNENBAUM HELPERN
        SYRACUSE & HIRSCHTRITT, LLP
       900 Third Avenue
       New York, New York 10022
       (212) 508-6700

      *Attorneys for Plaintiff and Counterclaim Defendant*
      *Highline Capital Management, LLC*

May 22, 2015

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 4

I. THE APPLICABLE RULE 12(B)(6) STANDARD ........................................................... 4

II. HLVP'S FIRST COUNTERCLAIM FAILS TO STATE A CLAIM FOR
ABANDONMENT OF THE HIGHLINE REGISTRATION ............................................ 5

III. HLVP'S SECOND COUNTERCLAIM FAILS TO STATE A CLAIM FOR
RECIFICATION OF THE TRADEMARK REGISTER .................................................. 12

CONCLUSION ............................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**CASES**

*Alexander v. Sandoval,* 532 U.S. 275 (2001) ................................................................................13

*American Security Bank v. American Security & Trust Co.,* 571 F.2d 564 (C.C.P.A. 1978) ........10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 4, 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 4, 12

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002) ................................................... 4, 9

*Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 U.S.P.Q. 1645 (T.T.A.B. 2010) ......................10

*Colonial Elec. & Plumbing Supply of Hammonton, LLC v. Colonial Elec. Supply, Ltd.*,
    05-5408, 2007 WL 4571105 (D.N.J. 2007) ............................................................................10

*Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991) .............................................9

*D & J Master Clean, Inc. v. Servicemaster Co.*, 181 F. Supp. 2d 821 (S.D. Ohio 2002) .............11

*Fifth Avenue of Long Island Realty Assocs. v. Caruso Mgmt. Co., Ltd.*, 718 F. Supp. 2d
    292 (E.D.N.Y. 2010) ...............................................................................................................11

*Granny's Submarine Sandwiches, Inc. v. Granny's Kitchen, Inc.*, 199 U.S.P.Q. 564, 1978
    WL 21248 (T.T.A.B. 1978) ................................................................................................ 9, 10

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ...................................................................................4

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) .........................................................................4

*Herb Reed Enter., LLC v. Florida Enter.*, 736 F.3d 1239 (9th Cir. 2013), *cert. denied* 135
    S. Ct. 57, 190 L. Ed. 2d 31 (2014) ............................................................................................5

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759 (2d Cir. 1991) ..................9

*Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014) ................................................. 3, 4

*Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*, No. 01 Civ. 0849, 2002 WL
    1560789 (S.D.N.Y. 2002) .......................................................................................................12

*Nat'l Bakers Svcs., Inc. v. Hain Pure Food Co., Inc.*, 207 U.S.P.Q. 701 (T.T.A.B. 1980) ...........10

*Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp.2d 286 (S.D.N.Y. 2000) ...............................5

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) ...........................11

*UPS Store, Inc. v. Hagan,* No. 14 Civ. 1210, 2015 WL 1456654 (S.D.N.Y. Mar. 24, 2015) ........................................................................................................................................4

**STATUTES**

Section 8 of the Lanham Act, 15 U.S.C. § 1058 ......................................................1, 2, 8, 9, 12, 13

Section 37 of the Lanham Act, 15 U.S.C. § 1119 ..................................................................1, 12

Section 45 of the Lanham Act, 15 U.S.C. § 1127 ...........................................................................5

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................1, 4

Trademark Manual of Examining Procedure § 1604.13 .................................................................9

Plaintiff Highline Capital Management, LLC ("Highline") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) and Section 3.E.i.(2) of this Court's Individual Practices in Civil Cases to dismiss the amended counterclaims asserted by defendant High Line Venture Partners, L.P. ("HLVP")[1] in Defendants' Answer and Amended Counterclaims filed on May 1, 2015 (Dkt. No. 39, the "Amended Counterclaims").  Highline previously moved to dismiss the three counterclaims HLVP asserted in its initial Answer and Counterclaims, dated March 25, 2015 (Dkt. No. 31, the "Original Counterclaims").  In response HLVP repleaded one of its counterclaims, recast a second counterclaim in slightly revised form and determined not to replead a third counterclaim.  Highline now moves to dismiss the Amended Counterclaims because, even as restated, each of HLVP's counterclaims fails to state a claim for which relief can be granted.

## PRELIMINARY STATEMENT

HLVP's two counterclaims are variations of the same argument.  Each seeks cancellation of Highline's incontestable United States Trademark Registration No. 2,502,179 for the mark HIGHLINE for "[f]inancial services in the nature of investment fund management" (the "HIGHLINE Registration") because Highline purportedly does not use the HIGHLINE mark by itself, but only in conjunction with the words "Capital" or "Capital Management" and/or as an element of a logo.  On this basis HLVP seeks, in Count I, cancellation of the HIGHLINE Registration on the ground that Highline has allegedly abandoned use of its mark through non-use with intent never to resume and, in Count II, rectification of the United States Trademark Registry pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, because Highline's Declaration of Use, filed pursuant to Section 8 of the Lanham Act, 15 U.S.C. § 1058, purportedly

---

[1] None of the other defendants asserts counterclaims.

does not appropriately show use of the HIGHLINE mark by itself in commerce.[2]  The fundamental premise underlying both claims is incorrect as a matter of law and uncontested fact. Highline's use of the HIGHLINE mark in the name "Highline Capital Management" and in a logo containing HIGHLINE along with the word "Capital" demonstrates continuing use under the Lanham Act, not abandonment.  Moreover, the documents that HLVP attached to its own Amended Counterclaims demonstrate that Highline does use the HIGHLINE mark in a stand-alone fashion as well.

Among the documents that HLVP attached to its Amended Counterclaims are Highline's specimens, filed with the United States Patent and Trademark Office ("Trademark Office"), demonstrating use of the HIGHLINE mark.  Under Section 8 of the Lanham Act, Affidavits of Continuing Use must be filed with the Trademark Office in order to maintain trademark registrations between the fifth and sixth year of registration, and then again between the ninth and tenth year of registration.  15 U.S.C. § 1058.  Critically, the affidavits must be accompanied by a specimen showing how the mark is being used in the marketplace so that the Trademark Office can assess whether the mark is in fact being used, as registered, for the relevant goods or services.  Exhibits B and C to the Amended Counterclaims depict the specimens Highline submitted in 2007 and 2011, respectively.  The Trademark Office – which is charged with implementing Section 8 and is expert in its meaning and application – accepted and acknowledged that each specimen adequately demonstrated use of the registered HIGHLINE mark as a trademark on an ongoing basis, despite the use of HIGHLINE in those specimens in

---

[2]  HLVP's counterclaims would, in any event, have no material impact on Highline's affirmative claims.  Highline's complaint also alleges that HLVP's adoption and use of the mark High Line for financial services infringes Highline's federally-registered HIGHLINE CAPITAL mark (Complaint Count I), which HLVP does not seek to cancel, as well as false designation of origin (Count II), unfair and deceptive acts and practices (Count III), state common law infringement and unfair competition (Count IV), and state law trademark dilution (Count V).

conjunction with "Capital" or "Capital Management" and as an element of Highline's logo.[3] This is because "Highline Capital Management" and "Highline Capital" are the legal equivalents of HIGHLINE; "capital" and "management" are generic terms used to describe the capital management services Highline provides.

Another document that HLVP attached to its Amended Counterclaims, and on which it relies in bringing its counterclaims, is a reproduction of the current home page of Highline's website. *See* Exhibit A to the Amended Counterclaims. Not only does this exhibit show substantially same use of the HIGHLINE mark accompanied by the generic terms "capital" and "management," but it also shows that Highline uses the HIGHLINE mark alone, without descriptors, two separate times on that one web page alone (and, a review of HIGHLINE's website shows that it continues to do so throughout the entire website). These exhibits thus conclusively show that Highline has not abandoned its mark.

Count II fails for additional reasons. To the extent this Count is seeking the remedy of rectification of the registry because of the abandonment alleged in Count I, that is not a separate Count, but rather simply a remedy that should not be pled as a separate cause of action. If, instead, HLVP intends Count II to be a separate cause of action based on the Trademark Office's alleged improper acceptance of the specimens of use, that is not a private right of action that HLVP is entitled to bring. Either way, Count II fails to state a separate cause of action and should be dismissed.

---

[3] Similarly, the Trademark Office accepted Highline's specimen showing "Highline Capital Management, L.L.C." when it first registered the HIGHLINE trademark in 2001. *See* Exhibit A to the Declaration of David Sandler ("Sandler Dec."), submitted in support of this motion; *Kaplan, Inc. v. Yun*, 16 F. Supp.3d 341, 345 (S.D.N.Y. 2014) ("[T]he Court may take judicial notice of official records of the United States Patent and Trademark Office (PTO).").

# ARGUMENT

## I.

## THE APPLICABLE RULE 12(B)(6) STANDARD.

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *UPS Store, Inc. v. Hagan,* No. 14 Civ. 1210, 2015 WL 1456654, at *4-*7 (S.D.N.Y. Mar. 24, 2015). To survive a motion to dismiss, a counterclaimant must allege sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine plausibility, courts employ a "two-pronged approach." *Iqbal*, 556 U.S. at 679. First, while a court must accept all allegations as true, this principle is inapplicable to legal conclusions and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Second, a court must determine whether "well-pleaded factual allegations" assumed to be true "plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

In ruling on a motion to dismiss, a court may consider not only the facts stated on the face of the complaint, but also (a) documents appended to the complaint (such as the Exhibits HLVP attached to its Amended Counterclaims), (b) documents that are incorporated in the complaint by reference (such as Highline's website), (c) matters of which judicial notice may be taken (including filings with the Trademark Office, *Kaplan, Inc.*, 16 F. Supp.3d at 345), and (d) documents integral to the pleading, of which the pleader was aware and relied upon, even if the pleader chose not to attach them or refer to them in the complaint (such as the Trademark Office's acknowledgments and acceptances of Highline's specimens showing its use of the HIGHLINE mark in commerce). *Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002).

4

## II.

## HLVP'S FIRST COUNTERCLAIM FAILS TO STATE A CLAIM FOR ABANDONMENT OF THE HIGHLINE REGISTRATION.

HLVP's First Counterclaim should be dismissed because the pleadings themselves demonstrate that Highline has in no way abandoned its use of the HIGHLINE mark.

Section 45 of the Lanham Act provides:

> A mark shall be deemed to be "abandoned" . . . [w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in the mark.

15 U.S.C. § 1127. The standard for proving non-use of a registered trademark is high and must be proven with clear and convincing evidence. *See, e.g.*, *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp.2d 286, 295 (S.D.N.Y. 2000). *See also Herb Reed Enter., LLC v. Florida Enter. Mgmt. Inc.*, 736 F.3d 1239, 1247-48 (9th Cir. 2013), *cert. denied* 135 S. Ct. 57, 190 L. Ed. 2d 31 (2014) (the party seeking cancellation on abandonment grounds must allege the "complete cessation or discontinuance of trademark use").

HLVP's counterclaim itself disproves its allegations of abandonment. As shown below, HLVP includes, as Exhibits B and C, the two specimens Highline submitted to the Trademark Office specifically to demonstrate Highline's use of the HIGHLINE mark in commerce:



Amended Counterclaims, Exhibit B (specimen submitted with the Declaration of Use in 2007).



Amended Counterclaims, Exhibit C (specimen submitted with Affadavit of Continuing Use in 2011).

Paragraph 18 and Exhibit A to the Amended Counterclaims provide a screenshot of Highline's current website:



Amended Counterclaims, Exhibit A.  These specimens, and the screenshot of Highline's current website, demonstrate that Highline has not abandoned use of the HIGHLINE mark.  To the contrary, the HIGHLINE mark is prominently used in all three.

HLVP's argument hinges on the fact that the HIGHLINE mark appears in some locations in conjunction with the terms "Capital" and "Management."  That fact, though, is immaterial.  Those are generic terms for companies engaged in investing capital that cannot be monopolized by any trademark owner.  As such, they are generic for Highline's services and do not have any significance in terms of Highline's trademark rights.  Highline is not purporting to own the

marks "Capital" or "Management"; rather, it only seeks trademark rights in the distinctive term HIGHLINE.[4]

Moreover, contrary to HLVP's conclusory allegations, Highline regularly uses the HIGHLINE mark without the "Capital" or "Management" generic terms.  This can be seen in Exhibit A to the Amended Counterclaims, which reproduces the home page of Highline's website.  On the home page, Highline states:  "Since its establishment in 1995, ***Highline*** has performed fundamental research to create portfolios with attractive risk/return profiles.  ***Highline*** prides itself on producing a successful risk-adjusted track record relative to comparative U.S. equity market indices."  Exhibit A (emphasis added).  The specimen of use that Highline submitted to the Trademark Office in 2011, shown above (and attached to the Amended Counterclaims as Exhibit C), has nearly identical text, as well as additional references to Highline without the terms "Capital" or "Management."  The HIGHLINE mark is used alone on other pages of Highline's website as well.

Even without those references, though, Highline's uses of HIGHLINE CAPITAL and HIGHLINE CAPITAL MANAGEMENT would be more than sufficient to establish that Highline has not abandoned the mark HIGHLINE but rather regularly uses that mark.  As HLVP's own counterclaims establish, the Trademark Office itself agrees, because it accepted as evidence of continuing use of the HIGHLINE mark the very specimens that HLVP cites as evidence of abandonment.  The Trademark Office's published guidelines for examination of specimens submitted pursuant to an Affidavit of Continuing Use under Section 8 state: "If the mark, as used on the §8 specimen, creates a separate impression apart from any other material on

---

[4]  Indeed, in 2009, when Highline subsequently applied to register its logo – a composite word and design mark (*see* Amended Complaint, Ex. A) – it disclaimed the generic word "capital."  The registration noted that "no claim is made to the exclusive right to use 'capital' apart from the mark as shown."  *See* U.S. Trademark Reg. No. 3676129.

8

the specimen, then the specimen may be accepted as evidence of current use of the registered Mark." Trademark Manual of Examining Procedure ("TMEP") § 1604.13, *available at* http://tmep.uspto.gov/RDMS/detail/manual/TMEP/current/d1e2.xml#/manual/TMEP/current/TMEP-1600d1e377.xml. The Trademark Office applied this guideline when it reviewed the specimens Highline submitted, determined that they show use of the HIGHLINE mark in a way that creates a separate impression apart from any other material on the specimen (such as the generic terms "capital" and "management") and approved them as sufficient to show continued use of the mark HIGHLINE.[5]

HLVP's contention that these specimens do not show continuing use because HIGHLINE is not used in a "stand-alone" form (*i.e.,* apart from any other wording or design elements) is not only factually incorrect, as demonstrated by the home page of Highline's website, but also unsupportable as a matter of law. It is well established that use of a registered trademark in conjunction with generic or descriptive elements such as "Capital" or "Capital Management" does not constitute non-use of the registered trademark. For instance, in *Granny's Submarine Sandwiches, Inc. v. Granny's Kitchen, Inc.*, 199 U.S.P.Q. 564, 1978 WL 21248, at *3 (T.T.A.B. 1978), the Trademark Trial and Appeal Board ("TTAB") soundly rejected essentially the same argument HLVP makes here. In that case, respondent argued that the registration for GRANNY'S for restaurant services was improperly granted because the specimen displayed use

---

[5] HLVP's initial counterclaims pleaded that the Trademark Office accepted and acknowledged the specimen by issuing, on February 26, 2011, a Notice of Acceptance stating that Highline's application for renewal "'meets the requirements of Section 8 of the Trademark Act'" and a Notice of Renewal, stating that Highline's Statement of Use "meets the requirements of Section 9 of the Trademark Act.'" (Dkt. No. 31, ¶¶ 32, 33.) Although HLVP has chosen not to reference those documents in its amended counterclaims, the Court may nevertheless consider them. *Chambers*, 282 at 153; *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir. 1991). Copies of the Trademark Office's acknowledgment and acceptance of Highline's submissions including the specimens are annexed as Sandler Dec. Exhibits B and C.

of GRANNY'S KITCHEN rather than GRANNY'S alone.  Finding "kitchen" to be merely descriptive of restaurant services, the TTAB expressed the view that registration for GRANNY'S was properly granted, noting that "we completely agree with the Examiner that the specimens filed by respondent as part of its application for registration fully supported the issuance of the registration in view of the synonymity of 'KITCHEN' and 'RESTAURANT.'"  *Id.* at *5.

*Granny's* is consistent with other cases finding marks to be legally equivalent despite the addition of other descriptive words.  In *American Security Bank v. American Security & Trust Co.,* 571 F.2d 564, 567 (C.C.P.A. 1978), the court held that the addition of the word "Bank" to the registered trademark AMERICAN SECURITY for a bank did not alter the significance of the AMERICAN SECURITY mark.  It considered the two marks to be "legally equivalent" because "the word 'bank' is purely descriptive and adds nothing to the origin-indicating significance of AMERICAN SECURITY."  The same is true here of Highline's use of "Capital" and/or "Management" in proximity to HIGHLINE.  These words are generic for the financial services that Highline provides.  *See also Nat'l Bakers Servs., Inc. v. Hain Pure Food Co., Inc*., 207 U.S.P.Q. 701, at *7  (T.T.A.B. 1980) (HOLLYWOOD and HOLLYWOOD HEALTH FOODS; "It is our view that purchasers and prospective purchasers of applicant's mayonnaise would perceive both marks as 'HOLLYWOOD' and would not be deterred from this perception by the descriptive words 'health foods'"); *Citigroup Inc. v. Capital City Bank Grp., Inc*., 94 U.S.P.Q.2d 1645, at *12 (T.T.A.B. 2010) (CAPITAL CITY BANK and CAPITAL CITY BANK GROUP; "The word 'Group' adds nothing to the origin-indicating significance of CAPITAL CITY BANK and, therefore, CAPITAL CITY BANK and CAPITAL CITY BANK GROUP are essentially the same marks."); *Colonial Elec. & Plumbing Supply of Hammonton, LLC v. Colonial Elec. Supply, Ltd.*, 05-5408, 2007 WL 4571105, at *11 (D.N.J. 2007) ("The Court's holding that 'Colonial

Electric' and 'Colonial Electric Supply' are legal equivalents essentially makes the two names interchangeable.").[6]

These results are also in accordance with the well-established principle that minor changes in a mark that do not change its basic commercial impression will not support a claim of abandonment. *See, e.g., Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 955 (7th Cir. 1992). Rather, so long as the "key element," here HIGHLINE, remains in use, the addition of certain generic or descriptive words will not undermine the integrity of the mark. *Id.* (no abandonment by use of "THIRST-AID" instead of "THIRST-AID 'First Aid for Your Thirst'" because "key element" THIRST-AID remained in use); *see also D & J Master Clean, Inc. v. Servicemaster Co.*, 181 F. Supp.2d 821, 825 (S.D. Ohio 2002) (ServiceMASTER and ServiceMASTER Clean; "The word 'Clean' is purely descriptive and adds nothing of significance to the original mark."). The descriptive words "Capital" and "Management" and the H graphic do not alter the commercial impression of HIGHLINE and in no way demonstrate any intent to abandon the HIGHLINE Registration. Count I should be dismissed.

---

[6] This case is distinguishable from *Fifth Avenue of Long Island Realty Assocs. v. Caruso Mgmt. Co., Ltd.*, 718 F. Supp.2d 292, 307-09 (E.D.N.Y. 2010), where Judge Wexler granted the counterclaim brought by Caruso (owner of the AMERICANA AT BRAND mark) seeking cancellation of the plaintiff's AMERICANA trademark on the grounds that the plaintiff had ceased using the AMERICANA mark in favor of the AMERICANA MANHASSET mark. There, the evidence was "very clear" that the plaintiff no longer intended to use the mark AMERICANA and included specific directions to third parties to use only "Americana Manhasset" – not "Americana" – when referring to the plaintiff's shopping centers. Here, in contrast, Highline regularly uses HIGHLINE on its own. Moreover, Judge Wexler found, the addition of MANHASSET to the term AMERICANA created a mark with a different impression; here, in contrast, the addition of the generic terms "capital" and "management" to the HIGHLINE mark, which is used in connection with capital management services, does not create a commercial impression any different from HIGHLINE alone.

### III.

### HLVP'S SECOND COUNTERCLAIM FAILS TO STATE A CLAIM FOR RECIFICATION OF THE TRADEMARK REGISTER.

HLVP's Second Counterclaim also fails to state a claim for relief.

The Second Counterclaim seeks rectification of the United States Trademark Registry pursuant to Section 37 (*i.e.*, an order directing the Trademark Office to cancel or remove the mark) on a theory that Highline failed to comply with Section 8 in maintaining and renewing its HIGHLINE Registration. Specifically, HLVP alleges that, because the specimens Highline submitted in connection with its registration show the HIGHLINE mark only in conjunction with the words "Capital" or "Capital Management" and/or as an element of a logo, Highline did not show continuing use of its registered mark. HLVP therefore argues that the Trademark Office was wrong to renew the registration and that the Court should cancel the HIGHLINE mark and rectify the registry. Count II suffers from at least two fatal flaws.

*First*, as discussed in Section II, the exhibits HLVP attached to its pleadings show valid and continuing use of the HIGHLINE mark. Because the exhibits are the very specimens submitted to, and approved by, the Trademark Office in Highline's renewal application, they conclusively demonstrate that Highline complied with Section 8. HLVP's Second Counterclaim is thus implausible on its face and must be dismissed. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

*Second*, Highline has not alleged any valid bases in Count II on which to support rectification of the Registry. While "Section 37 authorizes the Court to provide certain remedies relating to registration," it "does not itself create a private cause of action." *Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*, No. 01 Civ. 0849, 2002 WL 1560789, at *10 (S.D.N.Y.

12

2002).  Section 37 is merely a remedial provision and does not confer independent jurisdiction on courts.  *See* Gilson on Trademarks § 4.10.

Alleged non-compliance with Section 8 also does not create a private cause of action. Section 8 simply provides that, to maintain a trademark registration, a registrant must file an Affidavit of Continuing Use of the mark and submit a specimen showing then-current use. 15 U.S.C. § 1058.  Enforcing compliance under the Section 8 requirements is the function of the Director of the Trademark Office, *id.*; *see Alexander v. Sandoval,* 532 U.S. 275 (2001) (private right of action under a federal statute should be implied only if the text and structure of the statute alone reveal that Congress intended to create a private right of action); it does not give a private party the right to usurp the Director's role.

Finally, to the extent HLVP seeks rectification based on Highline's alleged abandonment of the HIGHLINE mark, as alleged in Count I, rectification is only a potential remedy and not a separate count.  And for the reasons discussed above, HLVP's allegations of abandonment do not make out a plausible claim for such remedy.

For these reasons, Count II should be dismissed.

**CONCLUSION**

For the foregoing reasons, Highline's motion to dismiss HLVP's Amended Counterclaims should be granted, and HLVP's Amended Counterclaims should be dismissed in their entirety.

Dated: New York, New York
May 22, 2015

Respectfully submitted,

By: /s/ David H. Bernstein
David H. Bernstein
Matthew E. Fishbein
Megan K. Bannigan
David J. Sandler
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696

L. Donald Prutzman
TANNENBAUM HELPERN SYRACUSE
  & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
(212) 508-6700

*Attorneys for Plaintiff and Counterclaim Defendant Highline Capital Management, LLC*