# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIGHLINE CAPITAL MANAGEMENT, LLC, | Civil Action No. 15-cv- 660 (VEC) |
| *Plaintiff*, | |
| - against - | |
| HIGH LINE VENTURE PARTNERS, L.P., HIGH LINE VENTURE PARTNERS II, L.P., HIGH LINE VENTURE PARTNERS GP, LLC, HIGH LINE VENTURE PARTNERS GP II, LLC, and SHANA FISHER, | |
| *Defendants.* | |

| |
|---|
| HIGH LINE VENTURE PARTNERS, L.P., |
| *Defendant/Counterclaim Plaintiff*, |
| - against - |
| HIGHLINE CAPITAL MANAGEMENT, LLC, |
| *Plaintiff/Counterclaim Defendant*. |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF AND COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS <u>DEFENDANT AND COUNTERCLAIM PLAINTIFF'S AMENDED COUNTERCLAIMS</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.   Preliminary Statement .................................................................................................... 1
II.  Factual Background ........................................................................................................ 2
     A.   The Parties ........................................................................................................... 2
     B.   The Complaint ...................................................................................................... 2
     C.   HLVP's Amended Counterclaims ........................................................................ 3
          1.   Count I: Cancellation of the HIGHLINE Word Mark ............................... 3
          2.   Count II: Rectification of the Trademark Register ................................... 4
III. Legal Standards.............................................................................................................. 5
     A.   FED.R.CIV.P. 8(a)'s "Short and Plain Statement" Rule ..................................... 5
     B.   Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(6) ...................................... 5
IV.  Argument ....................................................................................................................... 6
     A.   Count I: HLVP Pled Facts Sufficient to Render it Plausible that HCM
          Abandoned the HIGHLINE Word Mark ............................................................. 6
          1.   HLVP Pled Facts Supporting a *Prima Facie* Abandonment
               Claim.......................................................................................................... 7
          2.   HLVP Pled Facts Sufficient to Render It Plausible That
               HCM Does Not Use the HIGHLINE Word Mark as a
               Trademark .................................................................................................. 8
          3.   HLVP Pled Facts Sufficient to Render It Plausible That
               HCM Does Not Intend to Resume Using the HIGHLINE
               Word Mark as a Trademark ....................................................................... 8
     B.   Count II: HLVP Pled Facts Sufficient to Give Rise to a Plausible Claim
          for Rectification of the Trademark Register ........................................................ 9
     C.   HCM's Motion to Dismiss Should Further Be Denied Because It Would
          Require Resolution of Undecided Questions of Fact at the Pleadings Stage ....... 11
          1.   Trademark Abandonment is a Question of Fact ....................................... 12
          2.   Trademark Use is a Question of Fact........................................................ 13
          3.   Intent to Resume Using a Trademark is a Question of Fact ..................... 14
          4.   The "Legal Equivalents" Doctrine is a Mixed Question of
               Law and Fact............................................................................................. 14
V.   Conclusion ................................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accurate Grading Quality Assur., Inc. v. Thorpe*,
  2013 WL 1234836 (S.D.N.Y., Mar. 26, 2013) .................................................................. 2

*Archuleta v. Adams County Bd. of Comm'rs*,
  2009 WL 755665 (D. Col., Mar. 20, 2009) .................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 1940-41 173 L. Ed.2d 868 (2009). ......................... 6

Bridgeport Music, Inc. v. Universal Music Group, Inc.,
  2006 WL 2168868 (S.D.N.Y. July 28, 2006) ........................................................... 6

*Burgess v. Gilman*,
  316 Fed. Appx. 542 (9th Cir. 2008) ........................................................................ 13

*Crash Dummy Movie, LLC v. Mattel, Inc.*,
  601 F.3d 1387 (Fed. Cir. 2010) ............................................................................... 13

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.*,
  304 F.3d 1167 (11th Cir. 2002) ............................................................................... 13

*Edsal Mfg. Co., Inc. v. Vault Brands, Inc.*,
  2012 WL 5558849 (N.D. Ill., Nov. 15, 2012) ......................................................... 14

Emmpresa Cubana del Tabaco v. Culbro Corp.,
  213 F.Supp.2d 247 (S.D.N.Y. 2002) ......................................................................... 9

*Falso v. Ablest Staffing Services*,
  328 Fed. Appx. 54 (2d Cir. 2009) ............................................................................. 6

*Felix the Cat Productions, Inc. v. California Clock Co.*,
  2007 WL 1032267 (S.D.N.Y., Mar. 30, 2007) ......................................................... 5

*Gant v. Wallingford Bd. of Educ.*,
  69 F.3d 669 (2d Cir. 1995) ....................................................................................... 6

*Hana Financial, Inc. v. Hana Bank*,
  135 S. Ct. 907, 190 L. Ed. 800 (2015)..................................................................... 15

Harris v. City of New York,
  186 F.3d 243 (2d Cir.1999) ...................................................................................... 6

DC01 1071377 v1

*In re MF Global Holdings Ltd. Inv. Litigation*,
   998 F.Supp.2d 157 (S.D.N.Y. 2014) ........................................................ 12

*In re Rockefeller Center Properties, Inc. Securities Litigation*,
   311 F.3d 198 (3d Cir. 2002) .................................................................... 5

*ITC Ltd. v. Punchgini, Inc.*,
   482 F.3d 135 (2d Cir. 2007) ............................................................. 10, 15

*Lazar v. Cecelia Co.*,
   30 F. Supp. 769 (S.D.N.Y. 1939) ........................................................... 13

*Levi Strauss & Co. v. GTFM, Inc.*,
   196 F.Supp.2d 971 (N.D. Cal. 2002) ...................................................... 14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
   2006 WL 2807213 (S.D.N.Y., Sept. 28, 2006) ...................................... 5, 6

*Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*,
   2002 WL 1560789 (S.D.N.Y., July 15, 2002) ................................... 10, 11

*Menper Distributors, Inc. v. Germa Prods., Inc.*,
   2011 WL 2983716 (S.D. Fl., July 22, 2011) ........................................... 12

*Patsy's Italian Restaurant, Inc. v. Banas*,
   508 F. Supp. 2d 194 (E.D.N.Y. 2007) ........................................... 10, 11, 13

*Ritz Hotel, Ltd. v. Shen Mfg. Co., Inc.*,
   2009 WL 723394 (E.D. Pa., Mar. 17, 2009) ........................................... 13

Scheuer v. Rhodes,
   416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974) .............................. 6

Silverman v. CBS, Inc.,
   870 F.2d 40 (2d Cir.1989) ....................................................................... 7

Stetson v. Howard D. Wolf & Assocs.,
   955 F.2d 847 (2d Cir.1992) ..................................................................... 7

*Top Producer Systems Inc. v. Software Sciences Ltd.*,
   1997 WL 723049 (D. Ore., July 21, 1997) ............................................. 13

*Tuff-N-Rumble Management, Inc. v. Sugarhill Music Pub. Inc.*,
   8 F. Supp. 2d 357 (S.D.N.Y. 1998) .......................................................... 5

*Wallack v. Idexx Laboratories, Inc.*,
   2013 WL 1562523 (S.D. Cal., April 11, 2013) ....................................... 13

*Water Works Realty Corp. Edwards*,
   469 Fed.Appx. 2 (2d Cir. 2012) ................................................................. 12

**Statutes**

15 U.S.C. § 1064 ........................................................................................... 3, 9

15 U.S.C. § 1114 .............................................................................................. 2

15 U.S.C. § 1115 .............................................................................................. 3

15 U.S.C. § 1119 ..................................................................................... passim

15 U.S.C. § 1125 .............................................................................................. 2

15 U.S.C. § 1127 ........................................................................................... 7, 9

N.Y. Gen. Bus. Law § 349 ............................................................................... 2

N.Y. Gen. Bus. Law § 360 ............................................................................... 2

**Rules**

Fed.R.Civ.P. 12 ................................................................................................ 5

Fed.R.Civ.P. 8 .................................................................................................. 5

**Treatises**

4 McCarthy on Trademark and Unfair Competition, (2015) ............................ 14

Defendant and Counterclaim Plaintiff High Line Venture Partners, L.P. ("HLVP"), by and through its undersigned counsel, hereby submits the instant memorandum of law in opposition to Plaintiff and Counterclaim Defendant Highline Capital Management, LLC's ("HCM") motion to dismiss HLVP's amended counterclaims (*Dkts*. 39; 48-50, respectively).

## I.    PRELIMINARY STATEMENT

HCM's motion to dismiss should be denied because it does not identify any alleged pleading deficiencies in HLVP's Amended Counterclaims.   Instead, as shown *infra*, HCM's motion merely assumes the answers to questions of fact in its favor and thereby purports to usurp the fact-finder's role at trial.

HCM alleged in its complaint that HLVP's trade name infringes its putative registered HIGHLINE word mark.  However, as alleged in HLVP's Amended Counterclaims, HCM does not use the term "Highline" alone as a trademark, *i.e.*, to distinguish its hedge fund services in the marketplace from its competitors' hedge fund services.  Rather, HCM only uses "Highline" alone as a corporate trade name. Accordingly, HLVP's Amended Counterclaims seek (i) cancellation of HCM's federal trademark registration for the HIGHLINE word mark based on its abandonment of same, and (ii) rectification of the U.S. Trademark Register to reflect that HCM abandoned the HIGHLINE word mark.

Apparently conceding that HLVP's Amended Counterclaims are sufficiently pleaded, HCM makes merits-based arguments in its motion to dismiss that: (i) it has not abandoned the HIGHLINE word mark; (ii) it uses the HIGHLINE word mark; (iii) it never intended to abandon the HIGHLINE word mark; and (iv) the HIGHLINE CAPITAL and HIGHLINE CAPITAL MANAGEMENT marks are the "legal equivalents" of the term "Highline."  However, issues of trademark abandonment, trademark use, intent to resume use of a trademark, and application of the "legal equivalents" doctrine all present questions of fact and/or mixed questions of law and

fact, *none* of which can be decided at the *pleadings* stage.  Thus, HCM's motion to dismiss should be denied.

## II.      Factual Background

### A.      The Parties

HCM "is a New York City-based investment firm that focuses on mid and large capitalization U.S. equities long and short." *Dkt.* 39 at ¶ 18, Exh. A.  In common parlance, HCM is a hedge fund.  HLVP is not a hedge fund.  HLVP is a venture capital firm offering angel share investments of the firm's money to its customers.  *See Dkt.* 21.[1]

### B.      The Complaint

HCM commenced this action on January 29, 2015, seeking relief against HLVP (and other non-counterclaim plaintiffs) for: (i) federal trademark infringement under 15 U.S.C. § 1114; (ii) federal false designation of origin under 15 U.S.C. § 1125(a); (iii) deceptive acts and practices under N.Y. GEN. BUS. LAW § 349; (iv) trademark infringement and unfair competition under the common law of the State of New York; and (v) trademark dilution and injury to business reputation under N.Y. GEN. BUS. LAW § 360-*l*.  *See Dkt.* 1.

Despite the parties' five-year peaceful co-existence, HCM alleged that HLVP's trade name and alleged service mark—HIGH LINE VENTURE PARTNERS—creates a likelihood of consumer confusion and dilution with respect to HCM's marks-in-suit, namely: (i) U.S. Trademark Reg. No. 3,676,129 for the composite design and word mark HIGHLINE CAPITAL H (the "'129 Registration"), and (ii) U.S. Trademark Reg. No. 2,502,179 for the word mark HIGHLINE (the "'179 Registration").  *See Dkt.* 1.

---

[1] The Court may properly consider *Dkt.* 21 (which is the parties' February 27, 2015 joint letter to the Court) when determining the instant motion to dismiss because it was filed "on this case docket *prior* to the filing of [HLVP's] amended [counterclaims]."  *Accurate Grading Quality Assur., Inc. v. Thorpe*, 2013 WL 1234836, *6 (S.D.N.Y., Mar. 26, 2013). (emphasis in original).

**C.      HLVP's Amended Counterclaims**

HLVP filed its Answer and Amended Counterclaims on May 1, 2015.  *See Dkt.* 39.

HCM filed a motion to dismiss HLVP's Amended Counterclaims in their entirety on May 22,

2015.  *See Dkts.* 48-50.  A discussion of HLVP's Amended Counterclaims is set forth *infra*.

**1.      Count I: Cancellation of the HIGHLINE Word Mark**

"Count I is for cancellation of the '179 Registration [*i.e.*, the HIGHLINE word mark]

pursuant to 15 U.S.C. § 1119 on the grounds of Highline Capital's abandonment of the

HIGHLINE word mark within the meaning of 15 U.S.C. §§ 1115(b) and 1064(3)."  *Dkt.* 39 at ¶

12.  Count I is:

> "based on [HLVP's] information and belief, formed after reasonable inquiry, that:
> (i) Highline Capital has failed to use the HIGHLINE word mark in United States
> commerce on or in connection with the services identified in the '179 Registration
> for at least three (3) consecutive years, and Highline Capital has no intent to
> resume using the HIGHLINE mark in United States commerce on or in
> connection with the services identified in the '179 Registration in the foreseeable
> future […]."  *Id*. at ¶ 2.

In support of Count I, HLVP pled the following factual allegations:

> "16.  As shown in Exhibits B and C annexed hereto, Highline Capital's specimens
> of use filed in connection with maintaining and renewing the '179 Registration
> with the PTO in 2007 and 2011, respectively, do not show use of the stand-alone
> HIGHLINE word mark."  *Dkt.* 39 at ¶ 16.

> "18.  As reproduced *infra*, the HIGHLINE word mark does not appear as a stand-
> alone trademark on Highline Capital's website (attached hereto as **Exhibit A**)[.]"
> *Dkt.* 39 at ¶ 18. (emphasis in original).

> "19.   Instead, as shown in the image reproduced *supra*, Highline Capital
> exclusively uses its 'HIGHLINE CAPITAL H' composite word and design mark
> as a trademark on its website."  *Id*. at ¶ 19.

> "20.  On information and belief, Highline Capital does not advertise, market, or
> promote its service using the HIGHLINE word mark.  Instead, on information and
> belief, Highline Capital uses its 'HIGHLINE CAPITAL H' composite word and
> design mark, the phrase 'Highline Capital Management,' and/or the phrase
> 'Highline Capital Management, LLC' to advertise, market, and promote its
> services."  *Id*. at ¶ 20.

### 2.      Count II: Rectification of the Trademark Register

"Count II is for rectification of the U.S. Trademark Register pursuant to 15 U.S.C. § 1119 on the grounds of Highline Capital's failure to comply with Section 8 of the Lanham Act when filing the Declaration of Use and Application for Renewal with the PTO." *Dkt.* 39 at ¶ 26. Count II is based on "Highline Capital's failure to submit specimens showing current use of the HIGHLINE word mark in U.S. commerce on or in connection with the services identified in the '179 Registration when filing its declaration of use and application for renewal with the PTO." *Id.* at ¶ 2.

In support of Count II, HLVP pled the following factual allegations:

"30.  The specimen accompanying Highline Capital's declaration of use did not show use of the HIGHLINE mark as a stand-alone mark in U.S. commerce on or in connection with the services recited in the '179 Registration as of October 24, 2007.  *See* **Exhibit B**." *Dkt.* 39 at ¶ 31 (emphasis in original).

"31.  Accordingly, Highline Capital's declaration of use failed to comply with Section 8 of the Lanham Act.  As a result, the '179 Registration expired as a matter of law on October 30, 2007, and the PTO's Director was required to remove the '179 Registration from the U.S. Trademark Register." *Id.* at ¶ 31.

"34.  The specimen accompanying Highline Capital's application for renewal did not show use of the HIGHLINE mark as a stand-alone mark in U.S. commerce on or in connection with the services recited in the '179 Registration as of February 24, 2011.  *See* **Exhibit C**." *Id.* at ¶ 34 (emphasis in original).

"35. Accordingly, Highline Capital's Application for Renewal failed to comply with Section 8(b) of the Lanham Act.  As a result, the PTO's Director was once again required to remove the '179 Registration from the U.S. Trademark Register." *Id.* at ¶ 35.

"36.  The PTO's Director has not removed the '179 Registration from the U.S. Trademark Register." *Id.* at ¶ 36.

4

### III.   Legal Standards

#### A.   FED.R.CIV.P. 8(a)'s "Short and Plain Statement" Rule

HCM seeks dismissal of HLVP's Amended Counterclaims pursuant to FED.R.CIV.P. 12(b)(6) on the ground that each counterclaim allegedly "fails to state a claim for which relief can be granted." *Dkt.* 49 at 1.  Pursuant to FED.R.CIV.P. 8(a):

> "A pleading […] states a claim for relief [if it] contain[s]: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) <u>a short and plain statement of the claim showing that the pleader is entitled to relief</u>; and (3) a demand for relief sought, which may include relief in the alternative or different types of relief."  (Emphasis supplied).

#### B.   Motion to Dismiss Pursuant to FED.R.CIV.P. 12(b)(6)

"Because Fed.R.Civ.P. 12(b) applies equally to claims and counterclaims, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 2006 WL 2807213, *2 (S.D.N.Y., Sept. 28, 2006).

The inquiry on a FED.R.CIV.P. 12(b)(6) motion to dismiss is *not* "'whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support his claims.'" *Felix the Cat Productions, Inc. v. California Clock Co.*, 2007 WL 1032267, *1 (S.D.N.Y., Mar. 30, 2007) *quoting Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir. 1995).  Indeed, the Court's task is to "assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof." *Tuff-N-Rumble Management, Inc. v. Sugarhill Music Pub. Inc.*, 8 F. Supp. 2d 357, 360 (S.D.N.Y. 1998).

The non-movant should be afforded an opportunity to offer evidence in support of its claim if such claim "is plausible on its face." *Falso v. Ablest Staffing Services*, 328 Fed.Appx. 54, *1 (2d Cir. 2009).  A claim is facially plausible "when the [non-movant] pleads factual

content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Notably, when determining plausibility, the Court "must accept the factual allegations in the answer and counterclaims as true and draw all reasonable inferences in the claimant's favor." *Louis Vuitton Malletier*, 2006 WL 2807213 at *2; *see also Iqbal*, 556 U.S. at 664 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) ("[A]llegations of the complaint should be construed favorably to the pleader.").

In short, "dismissal is appropriate only where [the non-movant] can prove no set of facts consistent with the complaint that would entitle them to relief."  *Gramercy Advisors, LLC v. Ripley*, 2014 WL 4188099, *8 (S.D.N.Y., Aug. 25, 2014).  As will be demonstrated *infra*, in light of these standards, HCM's motion to dismiss cannot succeed.

## IV.  Argument

### A.  Count I: HLVP Pled Facts Sufficient to Support a Plausible Finding That HCM Abandoned the HIGHLINE Word Mark

Count I of HLVP's Amended Counterclaims seeks cancellation of the '179 Registration on the ground that HCM abandoned the HIGHLINE word mark.  Two elements must be pled to state a plausible trademark abandonment claim: "(1) non-use and (2) intent not to resume use." *Silverman v. CBS, Inc.,* 870 F.2d 40, 45 (2d Cir.1989); *accord Stetson v. Howard D. Wolf & Assocs.,* 955 F.2d 847, 850 (2d Cir.1992) ("To determine that a trademark or trade name is abandoned, two elements must be satisfied: non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future"); *see also* 15 U.S.C. § 1127.  Moreover, as a threshold matter, "[n]onuse [of a mark] for three consecutive years shall

be prima facie evidence of abandonment." *Id*.   In this regard, HLVP's Amended Counterclaims expressly allege:

> "Based on [HLVP's] information and belief, formed after reasonable inquiry, that: (i) Highline Capital has failed to use the HIGHLINE word mark in United States commerce on or in connection with the services identified in the '179 Registration for at least three (3) consecutive years, and Highline Capital has no intent to resume using the HIGHLINE mark in United States commerce on or in connection with the services identified in the '179 Registration in the foreseeable future […]." *Id*. at ¶ 2.

Furthermore, as shown *infra*, HLVP's Amended Counterclaims plead *facts* that, when accepted as true, render these two elements—and HCM's consequent abandonment—plausible.

### 1.      HLVP Pled Facts Supporting a *Prima Facie* Abandonment Claim

As factual support for its *prima facie* abandonment claim, HLVP alleged in its Amended Counterclaims that:

> "16. As shown in Exhibits B and C annexed hereto, Highline Capital's specimens of use filed in connection with maintaining and renewing the '179 Registration with the PTO in 2007 and 2011, respectively, do not show use of the stand-alone HIGHLINE word mark." *Dkt*. 39 at ¶ 16.

> "18.  As reproduced *infra*, the HIGHLINE word mark does not appear as a stand-alone trademark on Highline Capital's website (attached hereto as **Exhibit A**) [.]" *Id*. at ¶ 18.

Accepting these factual allegations as true (which a court must do on a motion to dismiss), HLVP's allegations render it plausible that HCM has not used the term "Highline" as a trademark for at least eight years, let alone three.  Accordingly, HLVP has pled a *prima facie* abandonment claim, and HCM's motion to dismiss should therefore be denied.

>2.    **HLVP Pled Facts Sufficient to Render It Plausible That HCM Does Not Use the HIGHLINE Word Mark as a Trademark**

HCM asserts, with respect to the first element, that HLVP "must allege the complete cessation or discontinuance of trademark use." *Dkt.* 49 at 5. (internal citations omitted). HLVP has done so, alleging in its Amended Counterclaims:

> "19.   […] Highline Capital exclusively uses its 'HIGHLINE CAPITAL H' composite word and design mark as a trademark on its website." *Dkt.* 39 at ¶ 19.

> "20.   On information and belief, Highline Capital does not advertise, market, or promote its service using the HIGHLINE word mark.  Instead, on information and belief, Highline Capital uses its 'HIGHLINE CAPITAL H' composite word and design mark, the phrase 'Highline Capital Management,' and/or the phrase 'Highline Capital Management, LLC' to advertise, market, and promote its services." *Id*. at ¶ 20.

Taken together, and accepted as true, the above-quoted allegations render it plausible that, to the extent HCM ever used the term "Highline" as a trademark, it has discontinued and/or completely ceased using the same.

>3.    **HLVP Pled Facts Sufficient to Render It Plausible That HCM Does Not Intend to Resume Using the HIGHLINE Word Mark as a Trademark**

With respect to the second element, "where non-use gives rise to the statutory presumption of abandonment, the trademark owner must come forward with evidence that the circumstances do not justify the inference of an intent not to resume use." *Empresa Cubana del Tabaco v. Culbro Corp.,* 213 F. Supp. 2d 247, 268 (S.D.N.Y. 2002).  As discussed *supra*, HLVP pled facts sufficient to give rise to the statutory presumption of abandonment.  Thus, the burden now shifts to HCM to rebut such presumption.

Nonetheless, assuming *arguendo* that HLVP failed to plead facts sufficient to establish a *prime facie* abandonment claim, HCM's intent not to resume using the term "Highline" as a trademark can be plausibly inferred from the factual allegations in HLVP's Amended

Counterclaims.   *See* 15 U.S.C. § 1127 ("Intent not to resume may be inferred from circumstances.")  Specifically, as quoted above, HLVP alleged that:

> "18.  As reproduced *infra*, the HIGHLINE word mark does not appear as a stand-alone trademark on Highline Capital's website (attached hereto as **Exhibit A**) [.]" *Dkt.* 39 at ¶ 18 (emphasis in original).

> "20.  On information and belief, Highline Capital does not advertise, market, or promote its service using the HIGHLINE word mark.  Instead, on information and belief, Highline Capital uses its 'HIGHLINE CAPITAL H' composite word and design mark, the phrase 'Highline Capital Management,' and/or the phrase 'Highline Capital Management, LLC' to advertise, market, and promote its services."  *Id.* at ¶ 20.

Put another way, HCM's website and marketing materials reflect its intent to use "HIGHLINE" alone as only a company name and, by contrast, to use its composite marks (such as HIGHLINE CAPITAL H) as its trademarks.

Based on the foregoing, HLVP's Amended Counterclaims plead facts sufficient to render it plausible that HCM abandoned the term "Highline" as a trademark within the meaning of 15 U.S.C. § 1064(3).   Accordingly, HLVP should be permitted to proceed to trial and present evidence in support of its abandonment claim, and HCM's motion to dismiss should be denied.

### B.    Count II: HLVP Pled Facts Sufficient to Give Rise to a Plausible Claim for Rectification of the Trademark Register

In Count II of its Amended Counterclaims, "HLVP seeks an Order, pursuant to 15 U.S.C. § 1119, directing the PTO's Director to rectify the U.S. Trademark Register by removing the '179 Registration therefrom."   *Dkt.* 39 at ¶ 37.   As a threshold matter, contrary to HCM's assertion, private claims for relief indeed can be asserted under 15 U.S.C. § 1119.  For example, in *Menper Distributors, Inc. v. Germa Prods., Inc.*, 2011 WL 2983716 (S.D. Fl., July 22, 2011), Count XII of the plaintiff's complaint sought "cancellation of Barillas LLC's mark pursuant to section 37 of the Lanham Act, 15 U.S.C. § 1119 […].").   *Id.* at *3.   The court denied the defendants' motion to dismiss this count, holding that the defendants "fail to persuade that Count

XII does not state a claim for relief." *Id. Accord, Patsy's Italian Restaurant, Inc. v. Banas*, 508 F. Supp. 2d 194, 207 (E.D.N.Y. 2007).

Moreover, HCM's reliance (*see Dkt.* 49 at 12) on *Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc.*, 2002 WL 1560789 (S.D.N.Y., July 15, 2002), is misplaced. In *Manganaro*, the plaintiff did not possess a trademark registration to assert against the defendant. Rather, the plaintiff sought an order under 15 U.S.C. § 1119 directing the U.S. Patent and Trademark Office ("PTO") to rectify the Trademark Register by "register[ing] the 'Manganaro' mark in the plaintiff's name for all purposes excluding six-foot hero sandwiches." *Id.* at *1. Furthermore, the plaintiff did "not effectively challenge[] [the validity of" the defendant's [trademark] registrations." *Id.* at *10. Thus, the Court held that there was "nothing [existing] in the register that needs to be rectified to conform to the rulings made in this case. In these circumstances, Section 37 does not authorize the Court to direct the registration that the plaintiff seeks." *Id.*; *cf. Patsy's Italian Restaurant*, 508 F. Supp. 2d at 207 (distinguishing *Manganaro*, and holding that: "Here, by contrast, the defendants filed a counter-claim directly challenging the validity of plaintiffs' trademark registrations claiming that the TTAB improperly cancelled I.O.B.'s former Registration No. 2,213,574. Accordingly, the court has the authority pursuant to Section 37 to determine the registrability of Registration No. 2,213,574 and to order rectification of the Registry.").

Here, like the counterclaim plaintiff in *Patsy's*, and unlike the plaintiff in *Manganaro*, HLVP seeks an order under 15 U.S.C. § 1119 directing the PTO to rectify the Trademark Register by cancelling HCM's *existing* registration for the HIGHLINE word mark, which HCM has asserted against HLVP in the complaint. Accordingly, under these circumstances, like the court in *Patsy's*, this Court has the authority pursuant to 15 U.S.C. § 1119 to order rectification

of the Trademark Register should the fact-finder determine at trial that HCM abandoned the HIGHLINE word mark.

Furthermore, HCM's other argument for dismissal of Count II of HLVP's Amended Counterclaims is as follows:

> "Because the exhibits [to HLVP's Amended Counterclaims] are the very specimens submitted to, and approved, by the Trademark Office in Highline's renewal application, they conclusively demonstrate that Highline complied with Section 8.  HLVP's Second Counterclaim is thus implausible on its face and must be dismissed." *Dkt.* 49 at 12.

HCM, however, proffers no authority at all for its *ipse dixit* assertion that the PTO's acceptance of its alleged specimens of use "*conclusively* demonstrate[s] that Highline complied with Section 8."  Nor could HCM proffer such authority because PTO decisions are not binding on Second Circuit courts.  *See Patsy's*, 508 F. Supp. 2d at 207 ("[T]he PTO's decisions are not binding on courts within this Circuit"), *citing ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 159 (2d Cir. 2007).  Thus, HCM's motion to dismiss Count II of HLVP's Amended Counterclaims based on the PTO's prior actions should be denied.

> **C.     HCM's Motion to Dismiss Should Further Be Denied Because It Would Require Resolution of Undecided Questions of Fact at the Pleadings Stage**

HCM's motion to dismiss should be denied also because it would require that the following questions of fact be decided in its favor at the *pleadings* stage: (i) whether HCM abandoned the HIGHLINE word mark; (ii) whether HCM uses the term "Highline" as a trademark; (iii) whether HCM intends to resume using the HIGHLINE word mark; and (iv) whether the marks HIGHLINE CAPITAL and/or HIGHLINE CAPITAL MANAGEMENT are the legal equivalents of the term "Highline."   While HCM's motion sets forth factual allegations and arguments intended to counter HLVP's well-pleaded Counterclaims, any evaluation of such allegations and arguments must be deferred until trial.

As a threshold matter, questions of fact are *not* decided at the pleadings stage; rather, the fact-finder decides them based on a fully-developed evidentiary record.  *See, e.g, In re MF Global Holdings Ltd. Inv. Litigation*, 998 F. Supp. 2d 157, 187 (S.D.N.Y. 2014) (denying motion to dismiss because of, *inter alia*, the existence of "questions of fact […] to be resolved after discovery"); *see also Water Works Realty Corp. v. Edwards*, 469 Fed. Appx. 2 (2d Cir. 2012) (observing that the "district court denied Appellants' motion to dismiss because numerous questions of fact preclude the entry of judgment at this time").

### 1.      Trademark Abandonment Is a Question of Fact

It is well-settled that trademark abandonment is a question of fact to be decided by the fact-finder, not by the court at the pleadings stage.  Indeed, as the Court held *76 years ago* in *Lazar v. Cecelia Co.*:

> "Whether there was an actual abandonment of the trade-mark is a question of fact.  I cannot rule as a matter of law that the complaint shows that there was such abandonment.  I am of the opinion that the complaint, on its face, states a sufficient claim upon which relief can be granted.  Whether or not the allegations can be sustained by proper evidence is not now before the Court.  Accordingly, defendant's motion to dismiss the complaint is denied."  *See Lazar v. Cecelia Co.*, 30 F. Supp. 769, 771 (S.D.N.Y. 1939) (emphasis supplied).

*Accord, Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 265 (2d Cir. 2011) ("The jury was asked to determine whether there was abandonment […]"); *Burgess v. Gilman*, 316 Fed. Appx. 542, 543 (9th Cir. 2008) ("Trademark abandonment is a question of fact […]"); *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1390 (Fed. Cir. 2010) ("Abandonment of a trademark registration is a question of fact, which this court reviews for substantial evidence."); *Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002) ("[Trademark] [a]bandonment is a finding of fact […]"); *Top Producer Systems Inc. v. Software Sciences Ltd.*, 1997 WL 723049, *3 (D. Ore., July 21, 1997) ("As for plaintiff's claim

that it has not in fact abandoned its mark, defendant has plead[ed] the requisite elements and

thus, whether abandonment has occurred is inappropriate to decide on a motion to dismiss");

*Wallack v. Idexx Laboratories, Inc.*, 2013 WL 1562523, *16 n. 6 (S.D. Cal., Apr. 11, 2013) ("A

determination of abandonment requires resolving questions of fact not appropriate for

consideration in a motion to dismiss."); *Ritz Hotel, Ltd. v. Shen Mfg. Co.*, 2009 WL 723394, *3

(E.D. Pa., Mar. 17, 2009) ("Whether the remaining goods associated with the registration have

been abandoned remains a question of fact."); and *Levi Strauss & Co. v. GTFM, Inc.*, 196 F.

Supp. 2d 971, 976 (N.D. Cal. 2002) ("Abandonment is a question of fact.").

### 2.      Trademark Use Is a Question of Fact

Moreover, like trademark abandonment, the issue of whether HCM uses the term

"Highline" as a trademark is a question of fact that cannot be decided at the pleadings stage.  *See*

*Edsal Mfg. Co. v. Vault Brands, Inc.*, 2012 WL 5558849, *4 (N.D. Ill., Nov. 15, 2012)

("[Whether the use of a word or phrase constitutes trademark use is a question of fact."). [2]

In particular, the distinction between use of a term as a trade name versus use as a

trademark is a question of fact that cannot be decided at the pleadings stage.[3]  *See* 4 McCarthy

on Trademark and Unfair Competition, § 9:14 (2015) (trade name vs. service mark use is a

---

[2] HCM claims the exhibits attached to HLVP's Amended Counterclaims "and the screenshot of Highline's
current website, demonstrate that Highline has not abandoned use of the HIGHLINE mark.  To the
contrary, the HIGHLINE mark is prominently used in all three." *Dkt.* 49 at 7.  However, as discussed
*supra*, whether the term "Highline" is used in the exhibits or on HCM's website as a trademark is a
question of fact that cannot be decided at the pleadings stage.  Accordingly, HCM's argument should be
rejected.
[3] As explained by the Trademark Trial and Appeal Board:

"[A] 'trade name' or 'commercial name' is the name of an organization and symbolizes the
reputation and goodwill of the business as a whole and distinguishes it from other companies
whereas a 'trademark' or 'service mark' is used to identify various products or services marketed
by that business and to distinguish those goods and services from those produced or rendered by
others. A 'trade name', used as such, cannot be registered under the provisions of the Lanham
Act." *In re Unclaims Salvage & Freight Company, Inc.*, 192 U.S.P.Q. 165, *3 (TTAB, May 27,
1976).

DC01 1071377 v1

"question of fact, determined from the manner in which it is used and the probable impact thereof upon purchasers"); *see also id*. at § 9:15 ("Th[is] determination is highly fact specific, turning on such factors as whether a full corporate name is used, whether it is in a distinctive or bolder type style or whether it is displayed in a different color.").

### 3.  Intent to Resume Using a Trademark Is a Question of Fact

As discussed *supra*, the second element of HLVP's abandonment counterclaim is whether HCM intends to resume using the term "Highline" as a trademark in the reasonably foreseeable future.  While HCM argues that this element should also be decided in its favor at the pleadings stage, HCM's intent with respect to the HIGHLINE mark is itself a question of fact that cannot be decided at this stage.  *See ITC Ltd. v. Punchgini, Inc.*, 373 F. Supp. 2d 275, 280 (S.D.N.Y. 2005) ("A party's intent is ordinarily a question of fact […].").

### 4.  The "Legal Equivalents" Doctrine Is a Mixed Question of Law and Fact

Finally, while HCM relies on the trademark doctrine of "legal equivalents" in its attempt to demonstrate non-abandonment, the Supreme Court recently confirmed the partially factual nature of this inquiry.  Specifically, in *Hana Financial, Inc. v. Hana Bank*, 135 S.Ct. 907, 908 (2015), the Supreme Court held that two marks are legal equivalents when "they create the same, continuing commercial impression."   Notably, "[c]ommercial impression must be viewed through the eyes of a consumer," and "[w]hen the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer."  *Id.* at 908, 911-12 (the doctrine of legal equivalents is a mixed question of law and fact, which "has typically been resolved by juries").  Accordingly,

HCM's reliance on the legal equivalents doctrine at the *pleadings* stage is misplaced, and its motion to dismiss should be denied.[4]

## V.  Conclusion

Based on the foregoing, HLVP respectfully requests that this Court: (i) deny HCM's motion to dismiss; (ii) set a date certain for HCM's Reply to HLVP's Amended Counterclaims; and (iii) award HLVP any further relief it deems just and equitable.

Dated: June 15, 2015
     New York, New York

Respectfully submitted,

*/s/ Jonathan D. Reichman*
Jonathan D. Reichman
Jonathan W. Thomas
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Tel.: (212) 425-7200
Fax: (212) 425-5288
Email: jreichman@kenyon.com
Email: jthomas@kenyon.com

Edward T. Colbert (admitted *pro hac vice*)
Erik C. Kane (admitted *pro hac vice*)
KENYON & KENYON LLP
1500 K Street, NW
Washington, DC 20005
Tel.: (202) 220-4200
Fax: (202) 220-4201
Email: ecolbert@kenyon.com
Email: ekane@kenyon.com

*Attorneys for Defendant and*
*Counterclaim Plaintiff HLVP*

---

[4] HCM relies on the following cases to support its argument that the HIGHLINE CAPITAL MANAGEMENT and HIGHLINE CAPITAL marks and the term "Highline" are allegedly legal equivalents: (i) *Granny's Submarine Sandwiches, Inc. v. Granny's Kitchen, Inc.*, 199 U.S.P.Q. 564 (T.T.A.B. 1978); (ii) *American Security Bank v. American Security & Trust Co.*, 571 F.2d 564 (C.C.P.A. 1978); (iii) *Nat'l Bankers Servs., Inc. v. Hain Pure Food Co., Inc.*, 207 U.S.P.Q. 701 (T.T.A.B. 1980); (iv) *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 U.S.P.Q.2d 1645 (T.T.A.B. 2010); and (v) *Colonial Elec. & Plumbing Supply of Hammonton, LLC v. Colonial Elec. Supply, Ltd.*, 2007 WL 4571105 (D.N.J., Dec. 27, 2007).  *See Dkt.* 49 at 3, 9-11.  Notably, the legal equivalents inquiry was not decided at the pleadings stage in any of these cases.

15

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that, on June 15, 2015, a true and correct copy of the foregoing document, entitled **<u>Memorandum of Law in Opposition to Plaintiff and Counterclaim Defendant's Motion to Dismiss Defendant and Counterclaim Plaintiff's Amended Counterclaims,</u>** was served via operation of the Court's ECF filing system, and that notice of such filing will be electronically transmitted to all parties indicated on the electronic filing receipt.

*/s/ Jonathan W. Thomas*
Jonathan W. Thomas

*Attorney for Defendant and*
*Counterclaim Plaintiff HLVP*

16