**Jonathan W. Thomas**
Direct 212.908.6850
jthomas@kenyon.com

Kenyon & Kenyon LLP
One Broadway
New York, NY  10004-1007
212.425.7200
Fax 212.425.5288

July 14, 2015

VIA ECF

The Honorable Valerie E. Caproni
United States District Judge, S.D.N.Y.
40 Foley Square, Room 240
New York, New York 10007

RE: *Highline Capital Management, LLC v. High Line Venture Partners, et al.*,
C.A. No. 15-cv-660 (VEC) (SDNY)

Dear Judge Caproni:

      We represent all Defendants and Counterclaim-Plaintiff High Line Venture Partners (collectively, "HLVP") in the above-referenced trademark action.  This letter responds to Plaintiff and Counterclaim-Defendant Highline Capital Management, LLC's ("HCM") July 6, 2015 letter to the Court (*Dkt*. 59), purportedly clarifying the record from the parties' telephone conference with Your Honor earlier that day (the "July 6 Follow-up Letter").  During the July 6 telephone conference, Your Honor ruled that HCM did not have to disclose its customer list to HLVP.  However, as discussed *infra*, HCM's July 6 Follow-up Letter, as well as its principals' recent deposition testimony, respectfully warrant reconsideration of Your Honor's July 6 ruling (whether by telephone conference, written submissions, or otherwise).

      1.      **The July 6 Follow-up Letter**

      During the July 6 telephone conference, Your Honor "asked whether Plaintiff had sought in discovery the names of Defendants' investors."  *Dkt*. 59 at 1.  In its July 6 Follow-up Letter, HCM admitted that it "did, in its earlier Document Request No. 2 (dated March 31, 2015), seek 'Documents sufficient to identify each investor in any of the High Line Entities and the amount invested.'"  *Id*.  However, HCM claims it "subsequently dropped its request for the names of [HLVP's] investors in the [parties' May 26, 2015] meet and confer […]."  *Id*.  As discussed *infra*, HCM's July 6 Follow-up Letter raises more questions than answers.

      The undersigned's firm and the attorneys working on this matter have no record or recollection of HCM ever dropping its request for the names of HLVP's investors—at the May 26 meet-and-confer or otherwise.  Although HCM never actually served the above-quoted Request No. 2, it did serve a number of other requests seeking the identity of HLVP's investors.  This includes Request No. 30, discussed during the July 6 teleconference with Your Honor, as

well as Request Nos. 2-3, which specifically sought the sources of funding for HLVP's investments. Furthermore, in subsequent correspondence, including, for example, HCM's counsel's May 11, 2015 letter, HCM specifically sought documents regarding "Defendants' clients, customers, investors, and sources of funding…" HCM ostensibly would not draft document requests seeking irrelevant information.

Moreover, HCM reasons in the July 6 Follow-up Letter that, because HLVP only has two (2) investors, it would be asymmetrical to compel HCM to disclose the "names of the hundreds [of] investors in its hedge funds." *Dkt*. 59 at 2. However, as discussed *infra*, the total number of investors does not alter the unquestionable relevance of HCM's customers' identities to this trademark action.

### 2. HCM's Principals' Recent Deposition Testimony

HCM's claim "that the probative value of the names of Plaintiff's investors is minimal at best […]" should be dismissed out of hand. Indeed, as discussed *infra* (and more fully in a supplemental brief if permitted by Your Honor), the names of HCM's investors are highly probative of at least three (3) *Polaroid* factors, which determine the dispositive issue in this trademark action: whether there is a likelihood of consumer confusion between HLVP's trade name and HCM's putative HIGHLINE trademarks-in-suit.

To prevail on their trademark infringement claim, HCM "must successfully establish that: (1) [it] ha[s] a valid mark entitled to protection under the Lanham Act; and (2) [HLVP] used a similar mark in commerce in a way that would likely cause confusion among the relevant consuming public." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F.Supp.2d 585, 595 (S.D.N.Y. 2010) *referencing Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006). To determine whether there is a likelihood of confusion, courts consider "the familiar *Polaroid* factors, which include: 1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers." *Gruner + Jahr USA Pub., et al. v. Meredith Corporation*, 991 F.2d 1072, 1077 (2d Cir. 1993).

The names of HCM's investors (which are considered "customers" in the financial services industry) are highly probative of the third, fifth, and eighth *Polaroid* factors, respectively. The third factor "considers the extent to which the parties' products compete with each other for customers." *Juicy Couture, Inc. v. Bella Intern. Ltd.*, 930 F.Supp.2d 489, (S.D.N.Y. 2013); *see also New Look Party Ltd. v. Louise Paris Ltd.*, 2012 WL 251976, *6 (S.D.N.Y., Jan. 11, 2012) (this factor '"consider[s] whether the two products compete with each other"'), *quoting W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993). The fifth factor concerns instances of actual consumer confusion between the parties' respective goods or services. "The relevant confusion to be avoided is that which affects <u>purchasing decisions</u>, and not confusion generally." *Omicron Capital, LLC v. Omicron Capital, LLC*, 433 F.Supp.2d 382, 393 (S.D.N.Y. 2006) (emphasis supplied). The eighth factor "considers[s] the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and

giving the attention such purchasers usually give in buying that class of goods." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 389 (2d Cir. 2005).

Here, HLVP cannot ascertain information relevant to the above-referenced *Polaroid* factors without questioning HCM's customers. Specifically, in their recent depositions, HCM's Chief Financial Officer and Chief Executive Officer (and founder), respectively, both testified that while they believe HCM offers venture capital services, it does not advertise its putative venture capital services to its customers. Instead, HCM includes its putative venture capital investments in a subset of investments not necessarily known to the consumers. In such deposition testimony, HCM admitted it keeps its investment portfolio highly confidential and only discloses it to its investors subject to a non-disclosure agreement. Even then, they do not advertise or volunteer information to consumers as to whether specific investments in the portfolio might constitute venture capital investments. Thus, in order to know whether HCM's customers consider HCM to be a venture capital firm in direct competition with HLVP, HLVP needs to know HCM's customers' identities and question them.

Moreover, HCM should be permitted to question HCM's customers in order to determine if they have been or are likely to be confused by HLVP's trade name. While HCM's counsel represented to the Court that its current customers could not possibly be confused because they are already HCM's customers, that does not address either: (a) the likelihood of confusion of *new* customers during the five years when HCM and HLVP coexisted; or (b) whether those customers would be confused in the future by HLVP's use of its trade name. Moreover, Plaintiff's CEO and 30(b)(6) designee, Mr. Jacob Doft, repudiated HCM's own counsel's statements and *does* consider current HCM customers to be potentially confused.

Furthermore, nothing in HCM's document production or party depositions reveals specific information about HCM's investors' alleged sophistication (*e.g.*, investing experience, net worth, education level, professional certifications, *etc*.). Thus, HLVP needs to question HCM's customers in order to obtain this information. Notably, courts have compelled the disclosure of customers' identities in order for the moving party to obtain such information. *See, e.g.*, *Gucci Am., Inc. v. Costco Cos.*, 98 Civ. 5613 (RLC)(FM), 2000 U.S. Dist. LEXIS 602 (S.D.N.Y., Jan. 24, 2000) (the court granting Gucci's request for a list of customers who purchased the allegedly infringing watch so it could question the customers in an effort to establish actual confusion); *Innovative Commun. Sys. v. Innovative Computing Sys.,* A-13-CV-1044-LY, 2014 U.S. Dist. LEXIS 96269 (W.D. Tex., July 16, 2014) (defendant's motion to compel plaintiff's client list was granted where the client list was relevant to showing, *inter alia*, the degree of care exercised by potential purchasers; the court holding that the "existence of clients outside of Texas is relevant to [the degree of care exercised by potential purchasers.]").

Based on the foregoing, HLVP respectfully requests that the Court: (a) schedule a second conference call to address the issue of whether HCM must disclose its customer list to HLVP or, alternatively, (b) allow the parties to brief the issue.

Thank you for your consideration of the instant request. If you have any questions concerning the herein, please do not hesitate to contact us.

Kenyon&Kenyon

        Respectfully submitted,

        */s/ Jonathan W. Thomas*
        Jonathan W. Thomas

cc: All Counsel of Record (*via ECF*)