UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HIGHLINE CAPITAL MANAGEMENT, LLC,<br><br>*Plaintiff*,<br><br>- against -<br><br>HIGH LINE VENTURE PARTNERS, L.P., *et al.*,<br><br>*Defendants*. | Civil Action No. 15-cv- 660 (VEC) |

**MOTION *IN LIMINE* #2**

**(EXCLUSION OF PROFESSOR RONALD T. WILCOX'S TESTIMONY)**

KENYON & KENYON LLP
Counsel for Defendants

One Broadway
New York, New York 10004
Tel.: (212) 425 – 7200
Fax: (212) 425 – 5288

Pursuant to Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c), and Federal Rules of Evidence 401, 402, 403, and 702, Defendants High Line Venture Partners, L.P., High Line Venture Partners II, L.P., High Line Venture Partners GP, LLC, High Line Venture Partners GP II, LLC, and Shana Fisher (collectively "HLVP") move to exclude testimony from Plaintiff's expert Professor Ronald T. Wilcox as improper rebuttal expert testimony.  Professor Wilcox was disclosed by Plaintiff Highline Capital Management, LLC ("HCM") to rebut issues related to branding within the venture capital and hedge fund industry raised by HLVP's experts Matthew Hoffman and Fabio Savoldelli in their reports.  However, Professor Wilcox does not confine himself to rebutting their opinions and raises new issues that he should have raised in an affirmative expert report.  Professor Wilcox should be precluded from testifying concerning opinions expressed in paragraphs 10–12, 13–15, 17–19, 27–28, and 30–31 of his expert report, which go beyond the scope of HLVP's experts' reports and are not relevant to the issues in this case or helpful to the Court in making factual determinations.

## I.  INTRODUCTION

The majority of Professor Wilcox's so-called responsive report constitutes a generalized lecture on marketing and branding, which has no bearing on the case and is not proper rebuttal to the reports of HLVP's experts.  *See* Declaration of Susanna P. Lichter ("Lichter Decl"). Ex. A at ¶¶ 10–12, 13–15, 17–19, 27–28, and 30–31.  Aside from a few paragraphs stating that brand can be important to financial services firms and "is an important factor for many institutional investors in selecting an asset manager," "[m]aintaining a positive brand image is important for Goldman [Sachs]," and "sophisticated investors can be prone to confusion by something as simple as a naming convention," (*id*. at ¶¶ 16, 20–22, 24–25, 29), Professor Wilcox does not specifically address branding as it pertains to venture capital funds and hedge funds – which this

case concerns – or the effect of branding on the highly-sophisticated institutional and individual investors who invest in such funds. He does not state that HCM's prospective or existing investors will be confused by HLVP's trade name, but rather observes that, if confusion did result, it would pose risks to HCM's brand. *Id*. at ¶¶ 12, 28–29. He does not indicate that, *e.g.*, he has any personal experience in the relevant industry, interviewed industry investors, or did any research or surveys specific to the branding of hedge funds and venture capital funds.

Instead, in his report, Professor Wilcox, whose experience appears to relate mainly to business administration and marketing, (*id*. at ¶¶ 1–5), presents an overview concerning the value of brands to consumers and companies, benefits conferred by strong brands, and risks posed by brand confusion. Professor Wilcox notes consumers' psychological associations with particular products and services as a company's "brand," referencing examples relating to Volvo, IBM, and Boeing. *Id*. at ¶¶ 13, 17, 19. He opines that "brands" provide financial benefits and value to the companies associated with them and also facilitate consumers' purchasing decisions. *Id*. at ¶¶ 14–15. He describes "brand building activities" in which companies engage to provide consumers with a positive impression of the company and explains that the "consequences of brand confusion are serious." *Id*. at ¶¶ 24–25, 28. This conclusory lecture on brands, benefits, and risks, which is not connected to the industry in question, is new subject matter that should be excluded under Federal Rules of Civil Procedure 26(a)(2)(D)(ii) and 37(c).

In addition, Professor Wilcox's speculative observations on marketing and his non-specific branding discussion do not "fit" with the facts of this case and thus are not helpful to the Court for the same reasons they do not constitute rebuttal. For these reasons, Professor Wilcox should be precluded from testifying on this subject matter at trial under Rule 702 of the Federal Rules of Evidence. His lack of familiarity with the applicable industries renders his opinions and

testimony irrelevant and inadmissible under Rules 401 and 402.  Finally, even if the Court considers his opinions relevant, his testimony should be precluded under Rule 403 because any probative value of that testimony is outweighed by the potential for wasted time at trial.

## II. LEGAL STANDARDS

### A. Expert Rebuttal Evidence

The scope of expert rebuttal is limited to the subject matter encompassed in the opposing party's expert report and is allowed only if it "is intended solely to contradict or rebut evidence on the same subject matter identified by another party …." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also United States v. Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) ("The function of rebuttal evidence is to explain or rebut evidence offered by the other party.");  *S.W. v. City of New York*, No. CV 2009–1777(ENV)(MDG), 2011 WL 3038776, at *2 (E.D.N.Y. July 25, 2011) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.") (citation and internal quotation marks omitted).

"Generally, a rebuttal expert report … should not raise new arguments or theories." *Associated Electric Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, CIV. NO. 3:11CV715 (JCH), 2013 U.S. Dist. LEXIS 152775, at *9 (D. Conn. Oct. 24, 2013) (citing *Ebbert v. Nassau County*, 2008 No. CV 05-5445(FB)(AKT), 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008)). "If a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence … at trial, unless the failure was substantially justified or is harmless ...." *Id*. at *9-10 (quoting *Innis Arden Golf Club v. Pitney Bowes, Inc.*, No. 3:06 CV 1352(JBA), 2009 WL 5873112, at *2 (D. Conn. Feb. 23, 2009) (quoting Fed. R. Civ. P. 37(c)(1))).

**B. Admissibility of Expert Testimony**

Testimony of a person retained as an expert witness is not automatically admissible. The party seeking to rely on an expert's opinions must demonstrate, by a preponderance of the evidence, that the opinions meet the requirements of Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593 n.10 (1993); *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). In the Second Circuit, this boils down to the following: a proffered expert opinion is admissible if the witness is qualified as an expert, the testimony is reliable, and the testimony will assist the trier of fact. *523 IP LLC v. CureMD.com*, 48 F.Supp. 3d 600, 642 (S.D.N.Y. 2014); *In re Fosamax Prods. Liab. Litig.*, 645 F.Supp. 2d 164, 172 (S.D.N.Y. 2009). The requirement "assist the trier of fact" primarily relates to relevance. *Daubert*, 509 U.S. at 591; *523 IP*, 48 F.Supp. 3d at 644. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. In other words, under *Daubert*, an expert's testimony must "fit" the specific facts of the case to be relevant under Rules 401 and 702. *Id.*; *Koppell v. New York State Bd. of Elections*, 97 F.Supp. 2d 477, 480 (S.D.N.Y. 2000); *In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp. 2d 230, 283 (E.D.N.Y. 2007). In addition, expert testimony may be excluded under Rule 403 if its "probative value is substantially outweighed by a danger of," among other things, "undue delay" and "wasting time." *See 523 IP*, 48 F.Supp. 3d at 644; *Fosamax*, 645 F.Supp. 2d at 174; *see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F.Supp. 2d 482, 493-94 (S.D.N.Y. 2009) (expert testimony shall be excluded when it is "unhelpful and therefore superfluous and a waste of time."). Finally, whether a proposed expert is qualified depends on his or her educational background, training, and experience in the relevant field. *523 IP*, 48 F.Supp. 3d at 642; *see also United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

### III.     ARGUMENT

#### A. The Majority of Professor Wilcox's Opinions are Improper Because They Do Not Consist of Permissible Rebuttal Under the Federal Rules of Civil Procedure

Paragraphs 10–12, 13–15, 17–19, 27–28, and 30–31 of Professor Wilcox's report should be stricken for exceeding the scope of a rebuttal report. HCM proffered Professor Wilcox as an expert to respond to Mr. Hoffman's and Mr. Savoldelli's reports, but he does not confine his "responsive" opinions to the "same subject matter" as is contained in their reports. This is improper, as Federal Rule of Civil Procedure 26(a)(2)(D)(ii) permits a party to disclose expert evidence *after* the other party's disclosure *only if* the evidence is "intended solely to contradict or rebut evidence on the same subject matter identified" by an initial expert witness. *United States v. Casamento*, 887 F.2d at 1172; *S.W. v. City of New York*, No. CV 2009–1777(ENV)(MDG), 2011 WL 3038776, at *2 (E.D.N.Y., July 22, 2013).

HLVP's experts' reports offer opinions and conclusions that branding is not as important for investment products as for other consumer goods, and that investors are not confused by a similarity in investment entity names. For example, Mr. Hoffman states that, to the managers and advisors who handle the type of investment funds at issue, "the name of a firm or a fund is unimportant, and somewhat incidental to the investment decision itself." Lichter Decl. Ex. B at 15. He supports this opinion with an example of several "Black Oak" investment entities, which are different investment vehicles (as are HCM and HVLP), and explained how he was able to separate the different Black Oak entities in his files to avoid confusion. *Id*. at 13–14.) Similarly, Mr. Savoldelli demonstrates that investors in hedge funds and venture capital funds are very sophisticated and do not make investment decisions "based solely, or even primarily, on a fund's 'brand' name." Lichter Decl. Ex. C at ¶¶ 8(iii), 8(iv), 85. Like Mr. Hoffman, Mr. Savoldelli's experience in the industry informs his opinions. *Id*. at ¶¶ 85–89.

In contrast, many of Professor Wilcox's opinions, *i.e.*, those contained in paragraphs 10–12, 13–15, 17–19, 27–28, and 30–31, concern principles of marketing, and the importance and value of branding in general.  For example, paragraph 13 describes psychological associations made based on features and benefits of a company's products, using Volvo's emphasis on safety as an example.  Lichter Decl. Ex. A at ¶ 13.  Paragraphs 17–19 discuss tangible value created by brands like IBM, Oracle, and Boeing.  *Id.* at ¶¶ 17–19.  These paragraphs are not permissible rebuttal within the meaning of Rule 26(a)(2)(D)(ii) because they contain materials and opinions that are new and non-responsive to HLPV's experts' reports, and should have been presented in an initial expert report, if at all.  *See Associated Electric Gas*, CIV. NO. 3:11CV715 (JCH), 2013 U.S. Dist. LEXIS 152775, at *17–18.  HCM chose not to do so and now seeks to introduce new evidence in the guise of rebuttal, to which HLVP has not had the opportunity to respond.

Under Federal Rule of Civil Procedure 37(c)(1), HCM may not use information or a witness if that information or witness was not properly disclosed under Rule 26(a), unless the failure was substantially justified or was harmless. *See* Fed. R. Civ. P. 37(c)(1).  Thus, the Court should strike the late-disclosed portions of his report that do not constitute permissible rebuttal. *See, e.g., Jorgenson Forge Corp. v. Consarc Corp.*, No. C00-1879Z, 2002 WL 34363668 (W.D. Wash. Jan. 2, 2002) (excluding expert as a rebuttal expert witness because his proposed testimony went well beyond the scope of the opposing party's reports and introduced new opinions).

**B. Professor Wilcox's Opinions Do Not "Fit" the Facts of This Case and Will Cause Undue Delay and a Waste of Trial Time**

Professor Wilcox's opinions set forth in paragraphs 10–12, 13–15, 17–19, 27–28, and 30–31 also do not "fit" the factual issues in this case.  HCM retained him to respond to opinions on the branding of venture capital funds and hedge funds like HVLP and HCM, respectively, and

whether consumers eligible to invest in those types of funds would be confused by similar trade names and trademarks. However, Professor Wilcox does not opine on "issues relating to brands and branding" of venture capital funds and hedge funds. As noted above, he does not state that venture capital and hedge fund consumers are confused or indicate that he has any experience with or researched the branding of venture capital funds and hedge funds. His generic opinions regarding "the importance to companies of building and protecting brands" and the "possible impact of harm" are not supported by specific facts or data related to the relevant industry and do not fit within the confines of the investment industry segments at issue in this case. Lichter Decl. Ex. A at ¶ 6.[1] Since these generic opinions will not be helpful to the trier of fact, they should be excluded.

Even if the Court finds his generic opinions of limited relevance, any probative value of his conclusory and speculative testimony regarding subject matter outside of his area of expertise is substantially outweighed by the undue delay and waste of time that it will cause during trial. *See* Fed. R. Evid. 403.

## IV.   CONCLUSION

For the reasons set forth above, HLVP respectfully requests that the Court grant this motion, and preclude Professor Wilcox from testifying at trial concerning the opinions expressed in paragraphs 10–12, 13–15, 17–19, 27–28, and 30–31 of his expert report.

---

[1] Professor Wilcox's lack of an opinion specific to the case may stem from his apparent lack of specific education and experience with investment products or the branding of investment products. Professor Wilcox identifies branding as a "general area of expertise", but lacks any specialized knowledge, skill, or training with respect to the venture capital funds and hedge funds relevant to this case, including any specific knowledge regarding consumers' (*e.g.*, investors') perceptions in the relevant industries in this case.

Dated: November 16, 2015				Respectfully submitted,

*/s/Jonathan W. Thomas*
Jonathan D. Reichman
Jonathan W. Thomas
Kenyon & Kenyon LLP
One Broadway
New York, New York 10004
Tel.: (212) 425-7200
Fax: (212) 425-5288
Email: jreichman@kenyon.com
Email: jthomas@kenyon.com


Edward T. Colbert (*pro hac vice*)
Erik Kane (*pro hac vice*)
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005
Tel.: (202) 220-4200
Fax: (202) 220-4201
Email: ecolbert@kenyon.com
Email: ekane@kenyon.com

*Attorneys for all Defendants*

## CERTIFICATE OF SERVICE

It is hereby certified that, on November 16, 2015, a true and correct copy of the foregoing document, entitled **Motion *in Limine* #2**, was served via operation of the Court's ECF filing system, and that notice of such filing will be electronically transmitted to all parties indicated on the electronic filing receipt.

*/s/Jonathan W. Thomas*
Jonathan W. Thomas